# Burleson *v.* Mays.

*Bill to Enjoin Ejectment and to Quiet Title.*

(Decided June 30, 1914. Rehearing denied July 25, 1914.
66 South. 36.)

1. *Compromise and Settlement; Consideration.*—Unless there be
reasonable ground for a controversy, the mere existence of a con-
troversy, without a suit pending, is not a sufficient consideration to
support a verbal settlement, but a compromise of matters in dispute
between parties to a pending suit, in the absence of fraud, is of itself
a sufficient consideration to uphold a parol contract of settlement,
which is binding on both parties, when made.

2. *Same.*—The facts considered, and it is held, that although at
the time of the compromise, the deed was not thought by either party

to be valid, except as a testamentary document, and the character of the estates which the parties acquired under the will was also a subject of dispute, the settlement made thereof was based upon an adequate consideration.

3. *Fraud; Statute of; Interest in Land; Compromise and Settlement.*—Where the compromise and settlement of a will contest involved the transfer of title to land, a parol agreement of settlement without the passing of deeds was not sufficient to pass title to the land in accordance with the settlement, under the statute of frauds.

4. *Same; Executed Agreement.*—Where, after parol settlement of a will contest, one of the parties acquired certain property in controversy and the other delivered possession to such party and the party continued in possession until such party in turn sold the property to another, the agreement was executed and came within the exception of the statute.

5. *Estoppel; Equitable; Interest in Land.*—Where one party applied to probate a will, and another party contested the probate, but before the determination of the contest a settlement was arrived at by the parties, and the claim under a deed was abandoned, and it was agreed that the parties should take under a will; whereupon the will was probated and the property surrendered under the terms of the will, and the party immediately took possession and retained the property until she conveyed it to another who was induced to purchase by a representation of the other party that the grantor had title to the property and a good right to convey, the party making the representation was thereby estopped to claim title to the property under a deed which was surrendered at the time of the probate of the will, although she contended that the settlement agreement had never been made, and if made was void.

6. *Wills; Construction.*—Where a testator bequeathed certain lands to his daughter P. and other lands to his daughter M., with the provision that if either should die without lawful heirs, the other should have all the estate, the word "heir" was not used in its technical sense, but in the sense of "children," or "issue," and the estate of the daughters was not subject to be defeated on the happening of the contingency of either dying without issue, but that the period at which it was intended that the whole of the property should go to the survivor was the date of the death of one without issue, prior to the death of the testator, and both daughters having survived the testator, they acquired the land in fee free from the conditions.

APPEAL from Marion Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by J. B. Burleson against Martha E. Mays, to enjoin an ejectment suit, and to quiet title to land. Decree for respondent and complainant appeals. Reversed and remanded.

See also *Mays v. Burleson*, 180 Ala. 396, 61 South. 75.

[Burleson v. Mays.]

E. B. & K. V. FITE, for appellant.

KIRK, CARMICHAEL & RATHER, and R. W. QUINN, for appellee.

MAYFIELD, J.—This is a bill in equity to enjoin an action of ejectment. The ground for injunction is equitable estoppel. Appellant and appellee claim title through a common source, one Seth Bottoms, who was the father of appellee. Appellant claims by purchase and deed from Prudence E. Frederick, another daughter of Seth Bottoms. The common source of title, by will of date January 30, 1873, devised his property to the two daughters in question. The will is short and is as follows: "Know all men by these presents: That I, Seth Bottoms, do will and bequeath to my two daughters, Prudence E. Bottoms and Martha E. Bottoms all of my estate, both lands and personal. The personal property shall be divided between the two daughters Prudence E. Bottoms and Martha E. Bottoms at my decease. My lands shall be divided as I shall prescribe. I do will and bequeath to my daughter Prudence E. Bottoms all of the lands belonging to the Jesse Weatherly place, or all of the lands that I bought of Jesse Weatherly with all of the improvements thereon. I do will and bequeath to my daughter Martha E. Bottoms all of the lands belonging to the place I now live on with all improvements thereon. All the lands that I shall buy or enter shall be divided between the two said daughters. If Prudence E. Bottoms should decease without leaving any lawful heir, Martha E. Bottoms shall have all of my estate; if Martha E. Bottoms should decease without leaving any lawful heir, Prudence E. Bottoms shall have all of my estate. If I should decease before my wife Darkas Bottoms, she,

the said Darkas Bottoms, shall have the full control of all my estate until her death; but shall not sell any of the lands or any part thereof. After her death the whole of my estate shall be as I have devised."

The will was probated in Marion county October 24, 1904. A certain deed from the father to appellee was made a part of the petition, by exhibit, for probate of the will; but by agreement between the parties on a contest of the probate of the will, this exhibit was withdrawn, and the contest thereupon withdrawn; and the will was probated without reference to the deed. The deed in question was made August 13, 1903, and conveyed the lands in dispute to appellee, they being the same lands theretofore devised by the testator to Prudence E. Bottoms, through whom appellant claims by deed.

The exact terms of this agreement between the parties on the contest of the will, whereby the deed was withdrawn, the contest dismissed, and the will allowed to be probated, are in dispute; but the parol proof, aided by the record of the probate court of the proceedings probating the will, shows that appellee was seeking to have the will probated, with the deed as a part thereof, and that Prudence E., who would thereby be deprived of the lands devised to her, contested the probate of the will, but that, in consequence of the agreement, appellee, who was the proponent in the probate court, withdrew the deed as a part of the will, and in consideration thereof, Prudence E. withdrew her contest, and the will, without reference to the deed, was probated. It further appears that appellee was in possession of the land in question, which was devised to Prudence E., at the time of the contest, and that after the will was probated she moved off the land and Prudence E. took possession, and held possession until

[Burleson v. Mays.]

she sold to appellant. The complainant alleges, and his proof tends to show, that by the agreement between Martha E. Mays and Prudence E. Frederick, wherein the contest of the will was withdrawn and the deed. withdrawn, etc., Prudence E., appellant's grantor, was to receive the lands in question under the will, in absolute fee, and Martha E. Mays, the other lands in absolute fee, notwithstanding the conditions of the will, and the deed. The effect and the details of this agreement are denied by appellee in her answer and proof. The record of the probate court and the acts and conduct of the parties tend strongly to support the allegations of the bill and the theory of the appellant.

It has been ruled by this court that the compromise of matters in dispute between parties or litigants, in the absence of fraud, is of itself a sufficient consideration to uphold a contract of settlement which, when made, was binding on both parties.—*Wyatt v. Evins,* 52 Ala. 285; *Allen v. Prater,* 30 Ala. 458. On a subsequent appeal in the latter case (35 Ala. 169), it is said that the mere existence of a controversy, with no suit pending, without more, is not a sufficient consideration to support a verbal settlement; that there must, in addition, be some reasonable ground for the controversy. This has been frequently repeated by this court.—*Crawford v. Engram,* 157 Ala. 321, 47 South. 712. Here there was a pending suit, and reasonable ground for the controversy.

As the agreement in question related to lands, and no writings were executed, of course it could not pass the legal title which had become vested by the will or the deed. If the parties had executed deeds in accordance with the agreement, there would be no need of a bill in equity to afford any relief to the parties; but it is on the theory that no such deeds were exe-

cuted that equity is called upon to afford the relief and to prevent one of the parties to the agreement from receiving the benefits of it and avoiding the burdens thereof.

If the deed in question was valid, and passed the title to appellee, then of course Prudence E. took no title under the will, and the probating of that instrument was neither beneficial nor detrimental to either party, so far as these lands were concerned.

At the time the will was offered for probate the deed was not thought by either party to be valid except as a testamentary document. This is shown by the fact that appellee offered it as a part of the will for probate; and it was not until this court held that it was valid as a deed, and was not a testamentary disposition, that the parties were certainas to its effect.— See *Mays v. Burleson,* 180 Ala. 396, 61 South. 75.

As to the character of the estates which Martha and Prudence took under the will, that question, which this court expressly declined to decide on the former appeal (180 Ala. 75, 61 South. 75), is still a doubtful question; so there was certainly a real and bona fide dispute and contention between the parties when they made the agreement for the settlement of the difference between them. And it was, no doubt, the desire to avoid the very kind of litigation which has ensued that induced the settlement.

As before stated, the records of the probate court, in part, bear out the contention of Prudence E. and appellant as to this settlement. While it was in part in parol, a portion of the consideration passed from one to the other, and the parties were put in possession of the lands, and the case was therefore brought within the exception to the statute of frauds.

[Burleson v. Mays.]

It is also alleged, and the proof tends to show, that appellee knew that appellant was buying the lands in question from Prudence E. Frederick, and that with such knowledge appellee represented to appellant that Prudence E. had a good title to the land and a right to convey, and that these representations partly induced appellant to purchase. If this be true—and we hold it sufficiently alleged and satisfactorily proven—the complainant was entitled to the relief prayed. It it, as we find from the record, a typical case for injunctive relief against an action at law on the ground of an equitable estopped. The case made by the bill and supported by the proof shows that complainant has the equitable title, but that the respondent has the legal title, and is attempting to enforce it against complainant in an unconscionable action at law. The chancellor held that the allegations of the bill were sufficient, but that the proof failed to support the allegations. In this last finding we cannot agree with the chancellor. It is true that the respondent and some of her witnesses deny the terms of the settlement, and that she agreed that if the contest of the will was withdrawn she would consent for her sister to have the lands in question in fee, and she would take those devised to her in the same manner, and would withdraw the deed and not claim thereunder, but her every act, word, and deed, when not specifically making denial of the agreement, shows or tends to show that the agreement was what complainant alleges it to have been, and that respondent so treated it for a long time, and that her effort to claim the land was an afterthought.

The evidence is undisputed that respondent surrendered the possession of the land in question to her sister immediately after the settlement, which was in accord with the agreement and wholly inconsistent with

her claim under the deed from her father after the settlement, until shortly before the action in ejectment was brought, which this bill seeks to enjoin. She knew that her sister was claiming the fee to this land, and that she had sold it to this complainant; and the fact was that the sale met the approval of respondent, who made the statement that she was glad to have complainant as a neighbor, and her family thereafter, with her knowledge, rented a part of the land from complainant. If she was then claiming this land under the deed in question, ought she not to have then objected, and to have refused to surrender the possession to her sister, and not have advised the complainant to purchase? It is true that she in terms denies that she advised complainant to purchase, and says she always claimed an interest in the land, and so advised complainant; but, as before stated, her acts and words, aside from this denial and statement that she so claimed, corroborate the complainant and his witnesses to the effect that after the settlement she claimed no interest in the land under the deed or the will until shortly before she brought the action of ejectment.

The chancellor finds that there was no consideration moving to the respondent to make the settlement, which the complainant contends she made, as to the probate of her father's will. In this we think the chancellor was in error. The consideration moving to her was that the will was to be probated without a contest, and by that she acquired title to lands other than those devised to her sister, and which were conveyed to her by deed. The deed was then thought to be good only as a. testamentary disposition, not good as a deed. If the deed had been good only as a testamentry disposition, as she and her attorneys then thought it to be, and the will was not probated, the respondent

would have taken nothing under the deed or the will, and her father's entire estate would have descended to all of his heirs, instead of going to her and her sister, in the manner provided in the will. So there was, then, ample consideration and good reason to make the agreement in question. She made sure of the land devised to her, and saved all the costs of the probate and contest if she had failed therein, which were shown to have been considerable, conceding the value of the property.

The probate of the will was contested on several grounds, some of which, if sustained, would have destroyed the will in toto, and also the deed. Such would have been the effect, if undue influence upon, or mental incapacity of, the testator and grantor had been established. Both of these grounds were in the contest, and the deed was then claimed to be a codicil to the will. The evidence satisfies us that these defenses were not feigned, but were made in good faith; certainly so far as the deed was concerned.

It would be unconscionable to allow the respondent to prosecute the ejectment suit to success, and recover these lands of the complainant. It would allow her to perpetrate a fraud upon the respondent, and upon the estate of her dead sister, who had warranted the title to this complainant, relying upon the agreement in settlement of their differences, as above detailed. Equity will not sanction or approve such conduct.

The following equitable principles and maxims, often reiterated by this and other courts, find fit application to the case made by this record: "The doctrine of estoppel is founded upon the primary and ultimate aims of the laws—the redress of wrong, the prevention of fraud, and the promotion of the ends of justice. Having its origin in good morals and in consid-

eration of good faith, its operation and effect are useful and beneficent, when its application 'is confined to cases, where it is manifest that the acts or statements on which another has relied and acted cannot be retracted 'without a breach of faith on the one hand, and injury on the other.' The underlying principle is that declarations or admissions, express or implied, made for the purpose of influencing the conduct of another, if the designed effect ensues, are conclusive upon the party making them. What one person has induced another to believe and act on to his detriment will, as between them, be regarded 'as true. But an estoppel, being in its nature defensive, will not be used to effectuate a gain, and will not be enforced, further than is requisite to protection from injury.—2 Smith's Lead Cases, 858 to 865." *Adler v. Pin et al.*, 80 Ala. 351, 354.

"It is a sound and honest rule of equity, supported by principles of justice as well as of public policy, that if one knowingly though passively, suffers another to purchase and spend money on land, under circumstances which induce an erroneous opinion or mistaken belief of title, without making known his claim, he shall not afterwards, in a court of conscience at least, be permitted to successfully assert any right or title against the purchaser.—*Hatch v. Kimball*, 16 Me. 146; *Marshall v. Pierce*, 12 N. H. 136; *Wendell v. Van Rensselar*, 1 Johns, Ch. [N. Y.] 354; *Blake v. Davis*, 20 Ohio., 231." *Ala. Gt. Southern R. R. Co. v. South & North Ala. R. R. Co.*, 84 Ala. 570, 580, 3 South. 286, 290 [5 Am. St. Rep. 401].

"It is a just and well-recognized principle, that 'He who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to keep silent,' and again, 'When a party negligently and culpably stands by and allows another

to contract on the faith of an understanding which he can contradict, he is afterwards estopped from disputing the facts in an action against the person whom he has assisted in deceiving, upon the principle that "Between the innocent parties, he who causes the injury must suffer." '—2 Her. on Est., Secs. 937, 938." *Harrie v. Am. B. & L. Ass'n,* 122 Ala. 545, 554, 25 South. 200, 202.

"The estoppel relied upon is known as an equitable estoppel, or estoppel in pais, and the law on the subject is well settled. 'The vital principle [says Herman] is that he who by his language or conduct induces another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. The remedy is always so applied as to promote the ends of justice.'—2 Herman on Estoppel, § 934; *Hendricks v. Kelly,* 64 Ala. 391; *Nelson v. Kelly,* 91 Ala. 569, 8 South. 690; *McCravey v. Remson,* 19 Ala. 430 [54 Am. Dec. 194] ; 7 Am. & Eng. Ency. Law, 18; 4 Am. & Eng. Dec., in Equity, 258." *Fields v. Killion,* 129 Ala. 373, 376, 29 South. 797, 798.

We think the chancellor erred also in the construction which he placed upon the will in question. While in his opinion he says it is unnecessary to construe the will, since this court construed the deed on the former appeal (180 Ala. 396, 61 South. 75), yet the effect he gives to the will and the deed shows that he did construe the will as passing the title of all lands to Martha, after the death of Prudence without issue or children. The language of the will in question is as follows: "If Prudence E. Bottoms should decease without leaving any lawful heir, Martha E. Bottoms shall have all of

my estate; if Martha E. Bottoms should decease without leaving any lawful heir, Prudence E. Bottoms shall have all of my estate."

The phrase "lawful heir," as here used, we agree with the chancellor means "children" or "issue," and not the technical sense of "heir"; but the whole of the quoted portion, in connection with all the other parts of the item, does not mean that if the estate once vests in either daughter, it is nevertheless subject to be divested by the death of such daughter without children or issue. The estate granted was not subject to be defeated on the happening of such contingency. The period of time at which it was intended that the whole of the property should go to the survivor was the date of the death of one of the daughters without child or issue, before the death of the testator. There was no intention shown that, if both daughters were living at the death of the testator, each should take a fee subject to be defeated or cut off by the death, without child or issue, of the other; but the clear intention of the testator was to provide that if one of the daughters died before the testator, and left no child or issue, then the whole of the devise should go to the survivor. Clearly the death of the testator was the period at which it was to be determined, whether the estate would go in the indicated shares to the two, or in whole to the survivor. It was not intended that if both were living at his death, the estate in fee which each took was subject to be defeated if she died without child or issue, and to vest in the survivor.

The rule of construction as to such provisions is thus accurately stated in the text books: "Words of survivorship—to what period referred. Where the gift is to take effect in possession immediately upon the testator's decease, words of survivorship are regarded as

intended to provide against the death of the objects of the gift in the lifetime of the testator, and prima facie refer to his death. Early English cases extended the rule to cases in which the gift was postponed to a prior life estate, or other particular interest carved out. The later English cases abandoned this position and adopted the rule that whether the gift be immediate or postponed, and whether the property be real or personal, words of survivorship prima facie refer to the period of division. If there is no previous interest given the period of division is the death of the testator and survivors at his death take the whole, but if a previous life estate be given, then the period of division is the death of the life tenant and survivors at such death take the whole."—29 Am. & Eng. Ency. Law (1st Ed.) p. 486.

"If there is an immediate gift to A., and a gift over in case of his death, or if he die, or any similar expression implying the death to be a contingent event, the gift over will take effect only in the event of A.'s death before the testator. * * * In regard to realty, if the devisee (divisor) gives A. the fee, a gift over in case of A.'s death, will be held to refer to his death before the testator."—Id. p. 502.

The rule was quoted with approval in the case of *Smith v. Smith*, 139 Ala. 413, 36 South. 616, and also in the second appeal in the same case by both the majority and the minority of the court. Justice Anderson, now Chief Justice of this court, who wrote for the minority on the original hearing, and for the majority on the application for a rehearing, says, in his minority opinion, which was in substance the majority opinion on the rehearing: "I cannot agree to an affirmance of this case upon the conclusion reached by the court upon the former appeal when this case was

here before, and which is reported in 139 Ala. 406, 36 South. 616. I do not qustion the rule as laid down by the authorities quoted and cited in the opinion, as they fix the termination upon the death of the testator, only in the absence of a contrary intent. I think the codicil of the will expresses a contrary intent, and one just the opposite to what was held in the former opinion. 'The cardinal rule, and one above all others, for the construction of wills, is to ascertain the intention of the testator and give it effect, if not prohibited by law.'—*Campbell v. Weakley,* 121 Ala. 64, 25 South. 694; *Wolffe v. Loeb,* 98 Ala. 426, 13 South. 744." *Smith v. Smith,* 157 Ala.. 79, 81, 47 South. 220 [25 L. R. A. (N. S.) 1045].

In his opinion, writing for the majority, he says:

"The testatrix having made a will, and being some years afterwards dissatisfied with it, declared in a codicil a deliberate purpose to change it, which she at once proceeded to do. This emphasizes the change, and is a caution to the courts to observe with care the mandates of the codicil embodying the change.—*Crozier v. Bray,* 120 N. Y. 374, 24 N. E.712. The will gave a fee to the two nephews equally. The change is that their several children living at their death shall take their several parts in fee simple. This created contingent remainders for the children until birth, and vested remainders as born, subject to divesture by death before the parent and cut down the fee of the nephews to a life estate."—*Smith v. Smith,* 157 Ala. 86, 47 South. 223.

Here, there is nothing in the will itself, and nothing in the codicil, to take the case without the rule announced in the texts and which was followed on the first appeal in *Smith v. Smith,* 139 Ala. 406, 36 South. 616, and approved on the second appeal.

[Sewell, et al. v. Holley.]

It follows that the decree of the chancellor must be reversed, and a decree will be here rendered, in accordance with the relief prayed in the bill, perpetually enjoining the respondent, Martha E. Mays, from further prosecuting her action of ejectment against the complainant, Burleson.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.