(121 So. 67)
**McGLATHERY v. MEEKS et al.** (7 Div. 832.)

Supreme Court of Alabama. March 21, 1929.

Allen & Dortch and Inzer, Inzer & Davis, all of Gadsden, for appellant.

92

Hood & Murphree, of Gadsden, for appellees.

BOULDIN, J. The bill is' for the sale of lands for division among tenants in common. Complainant, Hugh W. McGlathery, claims a statutory life estate by the curtesy as surviving husband of Nellie Mceks McGlathery, deceased. The theory of the bill is that Mrs. McGlathery, at the time of her death, was a tenant in common with her brothers, owning a vested interest under the will of her father, Wm. M. Meeks, deceased, and that, upon her death intestate, her husband took a life estate in her undivided interest, with reversion in her surviving children.

■ In such event complainant is entitled to maintain the bill. The relation of tenants in common obtains between him and the owners of other undivided interests. Cottingham v. Love, 211 Ala. 152, 99 So. 907.

The case would be different if the life estate was in the whole, and tenancy in common only among remaindermen or reversioners. Cobb v. Frink, 200 Ala. 191, 75 So. 939.

The inquiry then is: Did Nellie Meeks McGlathery take a vested indefeasible estate in the real estate under the will of her father?

Wm. M. Meeks died in 1906, leaving a widow, five sons, and one daughter, Mrs. McGlathery, surviving. She was then married to this complainant. They had one child at the time. Two children were thereafter born. All three survive. Mrs. McGlathery survived her father some 6 years. Two sons of testator were then married, and three unmarried. All were of full age, and all survive. The widow, Mary J. Meeks, never married again, and survived Mrs. McGlathery some 14 years. The present suit was brought after her death. The will of Mr. Meeks was executed a few weeks before his death. The estate disposed of was then of the value of about $100,000. The will was duly probated upon his death. The executors named therein qualified, and the estate remains substantially intact to the filing of this bill, and has enhanced in value. With this setting, the will is to be construed within its four corners.

While somewhat voluminous, the reporter is directed to set out the will in full in the report of the case. This is essential to a clear discussion.

The argument centers around "Article Eight."

Appellant relies upon some recognized rules in the construction of a will—following the mind of the testator—such as these:

■ A will speaks as of the death of the testator.

■ Words of survivorship, unless a different intent appears, are referred to that event; the purpose being to make the will complete, avoid a lapse for want of a beneficiary in being at the death of the testator, resulting in partial intestacy.

■ The law favors vested rather than contingent estates.

■ An estate created by the terms of one clause is not to be reduced by a later clause, unless such purpose is manifest.

■ When the will is drawn by one familiar with legal terms, the omission of such terms in their usual connection is significant. Terms or conditions are not to be interpolated on mere surmise. Spira v. Frenkel, 210 Ala. 27, 97 So. 104; Duncan v. DeYampert, 182 Ala. 528, 62 So. 673; Harrison v. Harrison, 213 Ala. 418, 105 So. 179; Brizendine v. American Trust & Savings Bank et al., 211 Ala, 694, 101 So. 618; Pearce v. Pearce, 199 Ala. 491, 71 So. 952; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388, 10 Am. St. Rep. 464; Darrow v. City of Florence, 206 Ala. 675, 91 So. 606; O'Connell v. O'Connell, 196 Ala. 224, 72 So. 81; Pitts v. Howard, 208 Ala. 380, 94 So. 495.

Seeking the mind of the testator from the will as a whole, it is clear enough that article 8 is to be construed in connection with other articles to which it relates. Indeed, its purpose is to clarify and define who shall take in the several distributions under articles 3, 4, 7, and 11.

The will is carefully drawn, and in the main is clear and complete in its provisions. By article 3 all personalty is bequeathed to testator's wife. Her interest is not limited in terms to a life estate. It is divided into two classes: (a) Monies and choses in action. All collections from this source, not used or expended by her, were to be by her divided among the children on the 1st of January next after the expiration of 12 months from the probate of the will. (b) All remaining personalty with the income thereon. In the event the wife did not consume or expend such income for any year, the residue was to be by her divided among the children on the 1st of the following January.

This and other features of the will disclose a primary purpose to make provision for his widow without limitation on her standard of living. Full confidence in her fidelity is

shown throughout. She is named as "Executrix and Trustee" in article 14.

Clearly enough article 3 vests the title to the personalty in the widow for her own use, but further impressed with a trust in favor of the children as to any surplus from year to year.

So, the children, including Mrs. McGlathery, took a beneficial interest in the personalty as of the death of the testator. It is averred that during her lifetime, some 6 years, she received $300 to $600 per annum as her portion of such income on the annual distribution. The bill is silent as to what was done with her share of this surplus income on annual distribution for some 14 years after her death.

Treating article 8 as written into article 3, does it not mean to name the specific persons to share in each distribution as of that date?

By article 4 all real estate is given to the wife "for her sole use and benefit during her natural life," but impressed with a similar trust, the distribution of surplus income among the children from year to year. Under this article Mrs. McGlathery took a beneficial interest in the realty as of the testator's death. Article 8 is in effect written into this article.

By article 5 the wife is given the home in Gadsden "for her sole use and benefit during her natural life," with provision for repairs or rebuilding from the funds of the estate. No trust is impressed upon the use of this home nor upon the income therefrom.

By article 6 it is declared that, in the event the wife shall marry again, all gifts to her, real and personal with the exception of the home, shall determine; all further interest and right of possession be divested out of her.

By article 7, in the event of the marriage of the widow, and in lieu of the estate devised and bequeathed to her for life or widowhood, she was to take a child's part of the estate, real and personal. Upon her marriage the entire estate, not theretofore sold under the terms of the will, was to be divided or sold for division among the wife and children. See article 12.

Article 8 is incorporated by reference into both articles 7 and 12, as if to say "upon such division between my wife and children the surviving child or children (if such there be) of any deceased child shall take the share of the ancestor."

Article 11, which is also referred to in article 8, looks to a sale of property, real or personal, by the executors for reinvestment, with provision that any funds thus derived and not reinvested shall enter into the annual distribution among the children.

With this summary of the several articles before us, we note:

First. The will looks to an annual distribution among the children on January 1st of each year so long as the widow shall live or until she remarries. In this division, surplus income from personal and real property, and funds derived from sales of the corpus of real and personal property, are all merged into a common fund. Article 8 designates the persons to whom such distribution shall be made from year to year. Nothing in the will indicates that the testator contemplated the income or proceeds of real estate should be kept separate from personalty and distributed on a different basis.

Second. By Article 12, disposing of the estate after the death of the widow without having remarried, the event which has now occurred, the division is to be made among the children as defined in article 8. This applies to both real and personal estate. We cannot suppose article 8 was to have one meaning when applied to some articles and a different meaning as to others—being incorporated by reference into all alike.

So we must conclude the final division is to be made among the *children* in precisely the same sense as the annual division of income and proceeds of realty and personalty during the life of the widow.

Let us consider appellant's view that article 8 is to be construed as referring to surviving children only of a child dying before the testator.

On this view it is claimed that the daughter, Mrs. McGlathery, took a vested estate upon the death of the testator, and upon her death a life estate passed to her surviving husband. This means such an indefeasible estate, as was subject to absolute alienation, would pass by will or by descent, subject to the payment of her debts. Thus a personal representative, and persons not known to the testator, would enter as parties to a distribution running through many years.

In this connection we may note that under article 7, in the event of the widow's marriage, a division of the estate was to be made at a different time and on a different basis from that under article 12, looking to division on the death of the widow.

The share any child should take on division was thus left uncertain and subject to a contingency which might occur at any time during the life of the widow. This is inconsistent with the idea of a vested and indefeasible title to a definite share in the lands as of the death of the testator.

It is true the will does not in terms say the distribution shall be among the children in being at the time of the several divisions as children are defined in article 8. Neither does it in terms devise a remainder to them. It does vest the title in the widow for life, subject to trusts above noted. Jordan v. Walker, 201 Ala. 248, 77 So. 838. Nor does it in express terms provide for survivorship as to children dying after the testator and before division, but without issue.

But in connection with other provisions it postpones a final division until the death or marriage of a widow, meantime vesting in chosen "executors and trustees," one of whom

94

is the life tenant, full powers of management, preservation, improvement, sale for reinvestment, and finally for division. In such case the reasons for the rule construing terms of survivorship as of the death of the testator do not obtain.

We are clear to the conclusion, on consideration of the entire will, that the annual distributions covering funds derived from the income and the corpus of real and personal property were to be made among the children, including the issue of deceased children, as of the date of distribution; and that a final division is to be made on like basis as of the death of the widow. Hughuley v. Burney, 211 Ala. 397, 100 So. 817; Burleson v. Mays, 189 Ala. 118, 66 So. 36; Darrow v. City of Florence, 206 Ala. 675, 91 So. 606; Reynolds v. Reynolds, 208 Ala. 674, 95 So. 180; Smith v. Smith, 157 Ala. 79, 47 So. 220, 25 L. R. A. (N. S.) 1045; Spira v. Frenkel, 210 Ala. 27, 97 So. 104.

This does not imply that the legal title in remainder was in abeyance during the life of the widow. Technically, a legal title may be regarded as vesting in some one at all times. We need not concern ourselves in this case whether it vested in the children or in the executors as trustees.

Granting that it vested in the children as devisees, it was subject to survivorship, not stated in terms, but in language equally clear. In all cases of vested estates in several, with survivorship among them, the devisees take a base fee, a defeasible estate, to become absolute when the estate is divided, and no longer subject to the survivorship declared in the instrument. Harrison v. Harrison, 213 Ala. 418, 105 So. 179.

The decree sustaining demurrer to the bill was in accord with these views.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.