32 So.2d 699

**ALLEN et al. v. MAXWELL et al.**

3 Div. 452.

Supreme Court of Alabama.

April 10, 1947.

Rehearing Denied Dec. 4, 1947.

---

[1] Ante, p. 419.

Jos. R. Bell, of Hayneville, and Martin, Turner & McWhorter and Walter Bouldin, all of Birmingham, for appellants.

D. M. Powell and Powell & Hamilton, all of Greenville, for appellees.

**LIVINGSTON, Justice.**

This is an appeal from a declaratory judgment rendered by the Circuit Court, in Equity, of Lowndes County, Alabama, construing the will of Marcellus J. Fagg, a former resident of Asheville, North Carolina. The case was submitted in the court below on an agreed statement of facts.

The subject matter of the controversy is certain described real estate located in Lowndes County, consisting of approximately nine hundred and forty-nine acres of land, and known as the "Miles Place." Both appellants and appellees claim to own said lands by virtue of the provisions of the will of Marcellus J. Fagg. The pertinent provisions of the will are as follows:

"Item 3. I will and devise to my daughter Minnie the use and occupation rents and profits of my plantation in the County of *Lowndes* and State of Alabama, known as the Miles place, which farm was conveyed to me by T. J. Middleton, Exr. of A. Miles to have and to hold to her during her natural life and at her death to such children as shall or may be born to her in lawful wedlock any deceased child to take the share its parents would have taken had they been living subject however to the devise to my beloved wife mentioned in Item 2nd of this will.

"Item 4. I give and devise to my *my* adopted daughter Bessie May Fagg my plantation in said County of *Lowndes* and State of Alabama known as the 'Patton & Fagg place' being the land purchased by me from D. O. Stanfield and deeded to me by T. J. Middleton & wife. I give her the use and occupation rents and profits of said land during her natural life time; and at her death to such children as shall or may be born to her in lawful wedlock the issue of any deceased child to take the share its parents would have taken if living subject to the devise to my beloved wife mentioned in Item 2 of this will. It is my will and intention that Bessie shall take and hold the rents &c of this land precisely as Minnie is to take hers as mentioned in Item 3 of this will. * * *

"Item 9. In case that either Minnie or Bessie should die without child or children then I devise the property that would have gone to said child or children had such been born, to the child or children of the survivor of them, and in case both of them should die without issue then the same is devised to my brother H. C. Fagg and his heirs forever."

The appellants claim through the daughter Minnie Fagg Malloy, referred to in the will, and her son, Fagg Malloy. The appellees claim through Bessie May Fagg Maxwell, the adopted daughter referred to in the will. More specifically, appellants contend that under item three of her father's will, Minnie Fagg Malloy acquired a life estate in the lands in controversy, and that the will vested in her son, Fagg Malloy, immediately upon testator's death the remainder in said lands, and that upon the death of Fagg Malloy without issue, before the death of his mother, his mother inherited his interest and devised it to appellants by will. Appellees contend that the estate created in Fagg Malloy, son of Minnie Fagg Malloy, was what is known as a base fee contingent upon his surviving his mother, and that because he died before his mother, the estate did not vest in him. Further, that the remainder created by item three of Marcellus J. Fagg's will was contingent; that it never vested in Fagg Malloy because he did not survive his mother, and that because of this she died without issue, and that upon her death, under item nine of the will hereinabove set out, the title to the lands referred to in item three of the will vested in appellees, the surviving children of Bessie May Fagg Maxwell, who was the adopted daughter of the testator, Marcellus J. Fagg, and his legatee named in item four of the will.

Marcellus J. Fagg executed his will quoted above on February 21, 1882. He executed a first codicil on December 3, 1885, and a second codicil revoking the first codicil on February 11, 1890. Copies of these instruments are respectively exhibits A, B, and C to the agreed statement of facts. The will and codicils were duly admitted to probate and recorded in both North Carolina and Lowndes County, Alabama.

At the time the original will was executed both Minnie Fagg, daughter of the testator, and Bessie May Fagg, an adopted daughter of the testator, were unmarried. Before the testator died in February 1894, Minnie Fagg had married T. F. Malloy in 1892 and a son Fagg Malloy had been born to them in October 1893, Bessie May Fagg had married Wallace Maxwell in 1889 and before the death of the testator Lois Maxwell had been born to them on December 23, 1890. Another daughter, Marcella Maxwell, was born to them on August 13, 1894. Three other children born to the Maxwells died unmarried without issue. Lois Maxwell and Marcella Maxwell still survive and are the appellees. Fagg Malloy was the only child of Minnie Fagg Malloy and he died intestate and unmarried in 1918. The wife of Marcellus J. Fagg died in 1895, T. F. Malloy died in 1915, Minnie Fagg Malloy died July 9, 1944, and Bessie May Fagg Maxwell died in March 1945.

Minnie Fagg Malloy, the mother and only heir of Fagg Malloy, devised the lands in question to the appellants by will which is made exhibit D to the agreed statement of facts.

The appellants claim that under the provisions of the will quoted above, Fagg Malloy, the only child of Minnie Fagg Malloy, took a vested remainder in fee upon the death of the testator, and that his mother, Minnie Fagg Malloy, inherited this remainder from him which she devised to appellants. The appellees maintain that because Fagg Malloy predeceased his mother the provisions of item nine of the will vested title to the property in them. The court below held that the remainder of Fagg Malloy was contingent upon his surviving his mother, that the remainder never vested in him because he died before his mother without issue and that upon the death of Minnie Fagg Malloy the remainder vested in the appellees, Lois Maxwell and Marcella Maxwell.

Manifestly the words *the issue of* were inadvertently omitted following the words "lawful wedlock" in item three of the will, as they appear in item four, and by the further expression in item four "It is my will and intention that Bessie shall take and hold the rents &c of this land precisely as Minnie is to take hers as mentioned in Item 3 of this will." Both items meaning the "child or children of any deceased child."

The pole star in the construction of wills is the testator's intent, and this intent is to be ascertained from the four corners of the instrument.

Section 137, title 47, Code of 1940, is as follows:

"No estate in lands can be created by way of contingent remainder; but every estate created by any will or conveyance, which might have taken effect as a contingent remainder, has the same properties and effect as an executory devise."

Remainders are either vested or contingent. Section 140, title 47, is as follows:

"Remainders are either vested or contingent. A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen."

As said in George v. Widemire, 242 Ala. 579, 7 So.2d 269, 272:

" 'A remainder is said to be vested when the estate passes out of the grantor at the creation of the particular estate, and vests in the grantee during its continuance, or eo instanti that it determines, when a present interest passes to a certain and definite person, to be enjoyed in futuro, and is said to be contingent when the estate is limited either to a dubious and uncertain person, or upon the happening of a dubious or uncertain event,—uncertainty of the right of enjoyment, as distinguished from the uncertainty of possession.' Phinizy v. Foster, 90 Ala. 262, 7 So. 836, 837; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72.

"The law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested at the earliest moment, and this being true, it is held: 'The intent to postpone the vesting of an estate must be clear, and must not arise by mere inference or construction.' Duncan v. De Yampert et al., 182 Ala. 528, 62 So. 673, 674; Pearce v. Pearce, 199 Ala. 491, 74 So. 952, 954. But, as stated by Justice Clopton in the case of Phinizy v. Foster, supra: 'The rule is generally applied when the intention of the testator is obscure and doubtful. It has no application when the intention to create contingent legacies or devises is clear. In respect to each of the rules the intention of the testator, as shown by the words employed by him, must control.'

' "In the case of Wright v. City of Tuscaloosa, supra, Mr. Justice Knight, quoting from Watters v. First National Bank of Mobile, 233 Ala. 227, 171 So. 280, said [236 Ala. 374, 182 So. 75]: 'Much stress is laid upon the principle that the law inclines to regard legacies as vested, rather than contingent, and the numerous authorities noted by the chancellor so announce this rule. But the basis of this rule rests in the presumption that the testator had in view the interest of the legatee who is the object of his bounty (Travis v. Morrison, 28 Ala. 494), and the question recurs, to the mind of the testator, as to what he considers to the best interest of the object of his bounty. If the whole scheme of the testator, as gathered from the entire will, discloses that he considered an early vesting of interest in his children not to their advantage, then, of course, the reason for the rule and its foundation would fail, and it would lose its significance. As said in the Travis case, supra (cited approvingly in a number of cases, First Nat. Bank v. Cash, 220 Ala. 319, 125 So. 28). "The law does not favor the vesting of legacies, contrary to the testator's intention, as inferred from an examination of the entire will." ' '

"The cardinal rule in the construction of a will is to ascertain the intention of the testator and give it effect if not in contravention of some rule or principle of law. Edwards et al. v. Bibb et al., 43 Ala. 666; Schowalter v. Schowalter, 217 Ala. 418, 116 So. 116; Fowlkes v. Clay, 205 Ala. 523–525, 88 So. 651; Reid v. Armistead, 228 Ala. 75, 151 So. 874; Watters v. First National Bank, 233 Ala. 227, 171 So. 280; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72; First National Bank of Tuscaloosa v. Hill, 241 Ala. 606, 4 So.2d 170."

In the case of Duncan v. De Yampert et al., 182 Ala. 528, 62 So. 673, 674, the language of the will was as follows:

" * * * I devise to my son Asberry H. De Yampert my Valola Plantation, to be held by him for his use and benefit during his natural life, but at his death to be equally divided between the heirs of his

body, but should he die without leaving a child or children, in that event he shall have the right to dispose of the lands herein devised to him and the heirs of his body in any manner he may see fit."

■ In that case a daughter of the life tenant died before the life tenant. The plaintiff, husband of the deceased daughter, claimed as her heir at law through his wife and through his deceased daughter by her. The defendants were the two sons of the life tenant. The court held that the words "heirs of his body" in the will were to be construed as meaning children. The precise question argued was whether the children of Asberry took vested remainders. The court said:

"The settled law is that a will speaks from the death of the testator, and that, in the absence of a clear manifestation of the testator's intent to the contrary, estates shall be held to vest at the earliest possible period. The intent to postpone the vesting of an estate must be clear, and must not arise by mere inference or construction. 'The law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested.' * * * There is a class of cases in which a remainder is regarded as vested, although all the persons who may take are not ascertained or in esse, and cannot be until the happening of some future event. 'And that is where there is a devise of a remainder to a class of which each member is equally the object of testator's bounty, as to "the children" of a person, some of whom are living at the testator's death.' * * * It is perfectly consistent with the vesting of the estate at the death of testator that the class may open to let in after-born children, as testator here no doubt intended should be the case in the event children should be afterwards born to Asberry. 2 Jar.Wills (6th Am.Ed.) marg. p. 1011, note 2. This rule is everywhere followed, and has been observed in a number of our cases, including Inge v. Jones, 109 Ala. [175,] 178, 19 So. 435, cited by appellees. So, also, speaking of devises to children (grandchildren in this case) as a class, Jarman says, 'that all who have existed in the interval between the death of the testator and the period of distribution, whether living or dead at the latter period, are objects of the gift, and may therefore not improperly be termed objects at that period; their decease before the period of distribution having no other effect than to substitute their respective representatives, supposing, of course, the interest to be transmissible.' * * * It follows that by the devise to the children of Asberry, his daughter Linda, in the circumstances which have been stated, took a transmissible estate in remainder, which vested upon the death of testator."

In this connection, see, also, McCurdy v. Garrett, 246 Ala. 128, 19 So.2d 449; Reynolds et al. v. Love et al., 191 Ala. 218, 68 So. 27, 29.

In Reynolds et al. v. Love et al., supra, the court construed the language of a will as reading "to Clarissa for life, remainder to Caroline for life, and remainder to her children," saying:

" * * * The devise to the children of Caroline, after her death, was vested as the children were born, subject to open and let in all children born unto said Caroline, and, of course, any child dying after the estate vested, the estate would descend and vest in such child's descendants, if any, and, if none, in its heirs at law." See, also, Harrison v. Harrison, 213 Ala. 418, 105 So. 179.

In Pierce et al. v. Fulmer, 165 Ala. 344, 51 So. 728, the devise was to the testator's wife for life or widowhood, remainder to his children. It was held that the children living at the death of the testator took a vested remainder and that the remainder was not limited to the children surviving the marriage or death of the life tenant. The court pointed out the distinction between that case and such cases as that of Smaw v. Young, 109 Ala. 528, 20 So. 370; George v. Widemire, supra; Phinizy v. Foster, 90 Ala. 262, 7 So. 836, where the remainder is restricted to the children who survive the life tenant.

■ In construing the question of the effect of item nine, two familiar rules of construction are immediately pertinent. The first is that an estate becomes vested at the earliest moment and the intent to postpone it must be clear and not arise from mere conjecture. White et al. v. Fowler, 245

Ala. 209, 211, 16 So.2d 399. The second rule is well stated in Duncan v. De Yampert et al., 182 Ala. 528, 62 So. 673, 675, as follows:

" * * * 'The rule is that where an estate or interest is given in one clause of a will, in clear and decisive terms, the interest so given cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate.' "

The provisions of item nine of the will cannot be construed as clearly and decisively requiring Fagg Malloy to survive the life tenant in order to take an indefeasible vested remainder. There is an entire absence of any language with respect to his survivorship of his mother. Moreover, item nine refers to property that would have gone to such child or children "had such been born," thus revealing clearly that the testator was looking to the birth of children, not to the death of children prior to their parents. The same intent is evident from the provisions of item three of the will in which remainder is left to such child of Minnie Fagg Malloy "as shall or may be born to her."

The provisions of the codicil made exhibit C to the agreed statement of facts appear to us to be conclusive of the testator's intent in this regard. Here it will be noted that the testator with respect to his Asheville property prescribed with great care and appropriate language that the remainders as to such property should finally vest only in the children of his daughters which survived such daughters' deaths. If the testator had intended the same result as to his Lowndes County property he would certainly have used similar language. Instead of doing so, he carefully stated in the codicil that he ratified and confirmed his last will and testament in every respect except insofar as inconsistent with the codicil. The codicil does not refer to the Lowndes County lands. Under such circumstances, the following reason of the court in Duncan v. De Yampert, supra, is applicable:

" * * * if such was the testamentary purpose (to require survival of remainder-men until termination of the preceding estate), its clear expression in the clause creating the remainder, as by the use of the words 'surviving' or 'then living,' would have been so easy and natural that we cannot suppose that it escaped the mind of a devisor who was at great pains to provide for grandchildren along with wife and children, as those elaborate provisions of the will which we have not quoted abundantly show."

Another firmly established principle is fatal to appellees' contention that the language of item nine required Fagg Malloy to survive his mother, the life tenant. That principle is that the language of a will, in the absence of a manifest intent to the contrary, speaks as of the testator's death and that therefore words of survivorship relate to the death of the testator. Consequently, Minnie Fagg Malloy not having died without children prior to the death of the testator, the contingency referred to in item nine was not operative. A case directly in point is McCurdy v. Garrett et al., 246 Ala. 128, 19 So.2d 449, where the will devised property to the testator's wife for life, remainder to testator's children with this proviso:

" * * * Should any of said children die without descendant or descendants living then the share of said deceased child shall be divided amongst its surviving brothers and sisters of the whole blood, the said surviving brothers and sisters taking each one share, and descendants of each of such deceased brothers and sisters taking one share."

In that case the court held under our decisions the children took a vested interest as born not subject to divestment, they being living at the death of the testator, because the will spoke from the death of the testator and in the absence of clear intent to the contrary, the estates vested at the earliest possible period.

Other cases enunciating the same principle are: Alexander v. Alexander, 239 Ala. 76, 193 So. 736, and Haigler v. Haigler, 202 Ala. 480, 80 So. 864.

In White v. Fowler, 245 Ala. 209, 16 So. 2d 399, 400, the court held that a remainder to the testator's heirs, after estates for life

or spinsterhood, was a remainder to testator's heirs at the time of his death and was not restricted to heirs surviving the precedent estate. The court thus stated the doctrine:

"Those cases show that the question has been fully settled that 'words of survivorship in a will, unless there is manifest intent to the contrary, always relate to the death of the testator.' Alexander v. Alexander, supra.

"Those cases proceed on the theory that a will speaks as of the date of the death of the testator, and survivorship therefore is as of that date unless a contrary intent is apparent in the form of the will itself, or the surroundings of testator material in that respect.

"We have here (we repeat) no provision for survivorship, expressed in the will. It provides for the testator's 'heirs,' but not conditioned upon survival at any time."

Especially noteworthy in the last case cited is the significance attached by the court to the absence of the words of survivorship, the same absence is significant in the instant case.

The doctrine of this line of cases holding that words of survivorship relate to the death of the testator is particularly applicable in the instant case when the circumstances under which the testator executed his will are considered. At the time the will was executed both Minnie and Bessie were young and unmarried. It was quite possible that either or both might die without ever having married or having children before the death of the testator, and it was natural under such circumstances that it was that event to which the testator was looking rather than the death of Minnie or Bessie some sixty-three or sixty-four years later leaving no children surviving them. This conclusion is confirmed by the language of item nine providing for a gift over to his brother, H. C. Fagg, in which the testator said "the same is devised." This gift over, it will be noted is in the present tense, thus indicating that if the same was to be operative at all it was to be operative upon the death of the testator.

■ It conclusively follows therefore that upon the death of the testator, Fagg Malloy took a vested interest in remainder in the property in fee, which was not divested by his death before that of his mother.

The decree of the trial court is reversed and the cause remanded.

Reversed and remanded.

GARDNER, C. J., and BROWN and SIMPSON, JJ., concur.

### On Rehearing

PER CURIAM.

The application for rehearing is overruled.

FOSTER, LIVINGSTON, LAWSON, SIMPSON, and STAKELY, JJ., concur.

GARDNER, C. J., and BROWN, J., dissent.

GARDNER, Chief Justice (dissenting).

Upon consideration of this cause I am persuaded that the decree of the lower court should have been affirmed. The question to be determined relates to the proper construction of the will here under review, a matter not free from difficulty. I am persuaded, however, that our original construction was at variance with the testator's intent. While a will is effective and speaks as of the date of the death of the testator, it is to be construed in the light of the facts existing when it was drawn and which were known to the testator. Kimbrough v. Dickinson, 247 Ala. 324, 24 So.2d 424. When the will was drawn the two daughters, Minnie and Bessie, were unmarried. The testator could not, of course, know whether either of them would marry, nor could he know whether or not either of them if married would have child or children.

We are now dealing with item 3 of the will. The testator was looking into the future years as to his daughter Minnie, and in item 3 devises to Minnie the land in Lowndes county for her natural life, adding "and at her death such children as shall or may be born to her in lawful wedlock." He further looked to the issue of any such children of Minnie who would take its parent's share, had such parent been living. But not knowing, of course, whether or not Minnie

would marry, or if she married whether or not she would bear children, the testator provided in item 9 that in case either Minnie or Bessie should die without child or children then the property would go to the child or children of the survivor of them. But he looked still further and met the contingency that both of them should die without issue and provided in such event that the property should go to his brother, H. C. Fagg.

With the general principles of law stated in the opinion I am in accord. It is in the application to the instant case with which I find myself in disagreement. Rules of construction, of course, are valuable aids to the court in arriving at the intention of the testator, but they should not be exalted to rules of positive law, but must yield to the master rule that the intention of the testator gathered from the four corners of the instrument and in the light of the surrounding facts and circumstances must control. I am of the opinion that some of our authorities illustrate the correctness of the construction given by the decree of the lower court. One of these authorities is that of Phinizy v. Foster, 90 Ala. 262, 7 So. 836. This case is sought to be distinguished from the instant case upon the theory that in the Foster case the words: "living at his death" are found in the will and omitted here. But as I view it, that difference does not suffice to render the Foster case inapplicable.

Construing item 3 of the will in connection with item 9, I think it clear enough that the testator intended when he gave to his daughter Minnie a life estate and used the words "and at her death to such children as shall or may be born to her," he meant such children *living* at her death. Such is the only reasonable construction of this language. At the time the testator died Minnie had one son, three months old; he lived to be twenty-five years of age and died; Minnie had no other children. The son never married, and, of course, had no children. There were no children of Minnie living at her death, nor issue of any child. I am persuaded that this very contingency was provided for in item 9 where the testator expressly stated that if Minnie should die without children then the property should go to the child of the survivor. In the Foster case, supra, is much discussion of vested and contingent remainder, where it is observed:

"It is an established principle that estates are regarded as contingent when the event upon which they take effect may or may not happen. * * * When the payment of a legacy is dependent upon an uncertain future event, which may or may not occur, it lapses if the legatee dies before the happening of the event. There must be some person in esse capable of taking when the contingency on which the right depends occurs."

As we previously observed the testator could not know whether Minnie would marry and, if so, whether or not she would bear children. I am persuaded that the language of the will indicated that the principle of the Foster case is here applicable.

As I view it, there is still a later authority by this court which is perhaps more directly in point, and should be decisive of this appeal—that of Reynolds v. Reynolds, 208 Ala. 674, 95 So. 180, 181. There the testator devised to his wife a life estate and upon her death made provision that the property should be equally divided between his five children, who were named, with the further provision that "should any of the above-named children die childless, then in that event, his or her share in my estate shall be divided among those living of the above-named children." The will did not state whether or not if these children should die childless before the falling-in of the life estate or before the division of the real estate, "then in that event, his or her share in my estate shall be divided among those living of the above-named children." All of the children were living at his death. One of the children died childless after the death of the testator, devising all his property to his wife. The wife died intestate without children, leaving surviving as next of kin her mother, Mrs. Amelia Harris, and a brother, William T. Harris. The holding was that the mother, Amelia Harris, and the brother, William T. Harris, had no interest in the property. The majority ruling was to the effect that under this will "Elizabeth A. Reynolds had a life interest during her

natural life in all of the real estate, and the reversionary interest in this real estate vested, one-fifth in each, in the five children mentioned and remembered in section 3 of the will, subject to be divested out of any one of them by his or her death, without children, prior to the falling in of the life estate—that is, prior to the death of Mrs. Elizabeth A. Reynolds; and the survivors at her death take the whole interest in the land, a fee-simple title to it." In support of this conclusion the court cited Burleson v. Mays, 189 Ala. 107, 66 So. 36, 40, wherein is found the general rule on the question of survivorship as follows: "If there is no previous interest given, the period of division is the death of the testator and survivors at his death take the whole, but if a previous life estate be given, then the period of division is the death of the life tenant and survivors at such death take the whole." And in the case of Reynolds v. Love, 191 Ala. 218, 68 So. 27, noted in the majority opinion are expressions which also sustain this view. The cases noted in the majority opinion have been examined, but we think they differ both in language of the will as well as in facts and surrounding circumstances, and in no manner conflict with the authorities herein noted and with the view which I have indicated; and I might add, by way of emphasis, that in none of these cases is the language similar to that in item 9 of this will.

Reduced to the last analysis, I am of the opinion that the fundamental error of the majority view is a misapplication of the rule as to survivorship. As pointed out in 33 Am.Jur. 577 the rule relied upon by the majority is confined to those cases in which there is no period to which survivorship can be referred, and that where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution or the termination of the precedent estate, and in favor of those only. As observed from the above noted authorities this is no rule in this state. It was definitely recognized and given application in Smith v. Smith, 157 Ala. 79, 47 So. 220, 25 L.R.A.,N.S., 1045. It was there observed the rule is that survivorship between devisees never relates to the death of the testator, unless there is no other time to which it can be referred, and that it naturally relates to the time of the death on which a previous estate terminates and on which the new estate is limited. This authority was cited approvingly with quotation of extracts from the opinion in the latter case of Baker v. Baker, 182 Ala. 194, 62 So. 284. See also McGlathery v. Meeks, 219 Ala. 89, 121 So. 67.

Of course this rule is not one of substantive law but one adopted by the court as a means of ascertaining the intention of the testator as expressed in the will. But the annotator of the notes in 114 A.L.R. 4, et seq. places Alabama among those states (see page 54) following this rule. And in Burleson v. Mays, 189 Ala. 107, 66 So. 36, the opinion quotes approvingly from Smith v. Smith, supra, and refers to the history of the change in regard to this rule, as now noted in 33 Am.Jur., supra, the quotation in the opinion of the Burleson case, supra, being from 29 Am. & Eng. Ency. of Law, First Edition, page 486.

As we read our cases, therefore, it is the proper rule of construction of a will that if there is no previous interest given the period of division is the death of the testator and survivors at his death take the whole, but if a previous life estate be given then the period of division is the death of the life tenant and survivors at such death take the whole. Applying, therefore, this rule of construction, I think it clear enough that the trial court reached the correct conclusion.

There is much reliance, as we have observed, upon the case of Duncan v. De Yampert, 182 Ala. 528, 62 So. 673, but there was in that case no such clause as item 9 of the will here under review, and, furthermore, there was no such uncertain contingency confronting the testator as in this case. In the De Yampert case, supra, the testator definitely knew the objects of his bounty, he knew the life tenants and also knew the remaindermen to whom he devised the property because they were all in life when he executed his will and also at the time of his death. We repeat that at the time of the execution of this will the testator knew only his two daughters, then unmarried, and his brother who under item

9 of the will was a remote contingent remainderman. If upon his birth the son of Minnie could be held to have a vested remainder, it was under authority of Smith v. Smith, supra, and other cases following, subject to divestiture by death before his mother. The son died many years before the mother and, therefore, in my opinion the daughter Minnie died without child, a contingency which the testator had foreseen might occur.

If the De Yampert case is thought to recognize and apply a different rule of construction than that of Smith v. Smith, supra, and the other cases herein noted, I would not hesitate to express my disapproval. I think, however, there are points of differentiation, as indicated. And I am further of the opinion that in subsequent decisions citing the De Yampert case it will be found that after all the conclusion rested upon the clear intention of the testator, irrespective of a rule of construction. Illustrative is McCurdy v. Garrett, 246 Ala. 128, 19 So. 2d 449, cited by the majority. It may be conceded the distinction as to these two rules of construction has not always been made clear, (see discussion in White v. Fowler, 245 Ala. 209, 16 So.2d 399) and expressions found in the cases are confusing. But I am persuaded the rule in the Smith and Burleson cases is the correct one and in line with modern thought. We should here and now declare the rule of construction as stated in these cases the correct rule to be followed.

Of course, it is clear enough that the result reached in the majority view is directly opposed to the will of the testator, or rather I should say, to his expressed wishes as found in the will, as it gives to the daughter Minnie a fee simple title (inheriting from her deceased son) when he had expressly willed her only a life estate. I recognize that subsequently occurring events not contemplated by the testator at the time he made his will and facts not known to the testator at that time are considered immaterial. 69 C.J. 66. We gave expression to this thought in Betts v. Renfro, 226 Ala. 635, 148 So. 406. Nevertheless, in cases of this character the will should be given a liberal construction so as to avoid, if possible, results contrary to the testator's intent, 69 C.J. 58, and every legimate conclusion indulged in to reach an equitable result, 69 C.J. 51. The thought I have in mind is well expressed by Judge Learned Hand (the senior judge of the Second Circuit, and considered one of our ablest jurists) in Central Hanover Bank & Trust Co. v. Commissioner of Internal Revenue, 159 F.2d 167, 169, where was used the following language: "There is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read the words literally, forgetting the object which the document as a whole is meant to secure. Nor is a court ever less likely to do its duty than when, with an obsequious show of submission, it disregards the overriding purpose because the particular occasion which has arisen, was not foreseen." These observations are directly applicable here, for if we keep in mind the overriding purpose of the testator but one result can follow, that is, agreement with the conclusion reached in the court below. But in my opinion in the instant case we have but to apply the rule as recognized in Smith v. Smith, supra, and reiterated in Burleson v. Mays, supra. So applying, I am persuaded we are carrying out the expressed will of the testator. It is clear enough to my mind that the date of the falling in of the particular estate, that is, the time of Minnie's death, determined who should take, and that the words "at her death" meant those living at her death. The testator had made provision for any issue of a deceased child, and as a consequence, therefore, in the absence of any such issue of a deceased child, the testator could only have intended to provide for a child of Minnie living at her death.

Nor can I agree that the codicil to the will which is Exhibit "C" referred to in the majority opinion tends in any manner to a contrary conclusion. In some instances testator uses the word "surviving" and other instances the same language as here involved in items 3 and 9. Indeed, as I view it, a reading of Exhibit "C" indicates a common purpose as to the disposition of testator's property—a life estate with remainder to children if surviving, or to issue of any deceased child surviving the parent.

Minnie died without child, a contingency which he had foreseen might occur, as expressly demonstrated in item 9 of the will, in which event he provided that it should go to the children of the surviving daughter. Such was the conclusion of the court below, with which I am in accord.

I, therefore, respectfully dissent.

Justice BROWN concurs in the foregoing view.