# Smith *v.* Smith *et al.*

### Bill in Equity for Partition.

1. *Construction of will; effect of words of survivorship; refer to period prior to testator's death.*—Where a devise is made to take effect in possession immediately upon the testator's death, words of survivorship, unless there is a manifest intention to the contrary, relate to the death of the testator; and if the devise is absolute, followed by a provision that if the devisee "should die without children," etc., then over, the words of survivorship refer to the death of the devisee during the life time of the testator; and if the devisee is alive at the death of the testator, he takes an absolute fee in the property devised.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOMAS H. SMITH.

The bill in this case was filed by the appellant, Georgia Curry Smith, against the appellees. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

On the submission of the cause upon motion to dismiss and the demurrers, the chancellor rendered an opinion which was as follows: "On consideration I am of opinion that under the terms of the will of Mourning S. Bocock the pasture lands passed in fee, and as to them, complainant states a cause showing that she is entitled to an allotment by partition and, therefore, the demurrers to the bill as a whole are not well taken. That while complainant under the terms of the will alleged in the bill, is not entitled to a fee in the lands therein described other than the pasture lands, she is entitled to a home during her widowhood in the share of her deceased husband, but the bill is not limited to an allotment to her as homestead, but prays a partition to set aside to her in fee one-half of the lands. I am of opin-

ion that the demurrers to that part of the bill are well taken."

The decree which was enrolled with the foregoing opinion overruled the motion to dismiss the bill, overruled the demurrers numbered from one to fourteen, and further adjudged that the demurrers to so much of the bill as sought a partition of the pasture lands be overruled, but that the demurrer to so much of the bill as sought a partition of the lands other than the pasture lands be sustained. From this decree the complainant, appeals, and assigns the rendition thereof as error.

THOMAS E. KNIGHT, for appellant.—In considering how far the codicil changed and modified the will, the court should have more strictly construed any divesting cause found in the codicil. This is a cardinal rule of construction, and no words from the testatrix were needed to secure such a construction from the court. This would follow, because the will and codicil together are to be construed as one instrument.—*Grimball v. Patton*, 70 Ala. 626  And divesting clauses are strictly construed, and an estate once vested will not be divested unless all events upon which the gift over is to take effect happen.—29 Amer. & Eng. Ency. Law, page 467, and notes.

There seems to be no doubt that the testatrix, by the use of the words in the codicil, intended to provide against the death of one or the other of the objects of the gift in the life time of the testatrix, and the death referred to was the death of the testatrix. Under the English rule there could be no escape from this conclusion, and the courts of the United States have, in a large measure, adopted the same rule.—29 Amer. & Eng. Encyc. Law, pp. 486, 488, 502; *Hoover v. Hoover*, 116 Ind. 498.

It is a familiar principle of the law that in construing wills the first taker is always to be considered the first and main object of the testator's bounty, and that his absolute estate is not to be cut down to an estate for life without very clear and convincing evidence of such intention on the part of the testator.—Smith on Execu-

tory Interest, § 662; *Mickley's Appeal*, 92 Penn. 515. To get at the meaning of Mrs. Bocock, the testatrix, is the first duty of the court. At the time of the execution of the original will, Mrs. Steele, the sister of the testatrix and one of the devisees, was in life; Mrs. Steele died shortly after the will was executed, and just before the execution of the codicil. The dates follow closely. Mrs. Steele was a legatee under the will, and had died. By providing for the disposition of the property in the event of the death of any of the devisees, the testatrix intended to make provision for deaths within her life time solely. The death of the nephews in the codicil provided against, was death occurring within the life of the testatrix.—29 Amer. & Eng. Encyc. Law, pp. 486, 487, 488, and 502; *Biddle's Estate*, 28 Pa. St. 59; *McCormick v. McElligott*, 127 Pa. St. 230; 135 Pa. St. 575.

W. M. SPENCER, W. H. TAYLOE, and GUNTER & GUNTER, *contra*.—The gift here, though originally in fee. was cut down to one for life with remainder to the children with remainder over if both devisees died without children. And Mr. Jarman says, Vol. 3, p. 540, that in such case it is very improbable that it should be intended that the children should take only on the event of the father dying second instead of first; "and if to this is added a gift over in the event of all dying without children, the conclusion is irresistible that what the testator meant was, that as long as there were descendants of any to take, they should take the whole; and the only mode by which effect can be given to this intention is by holding that cross-remainders are created between the *stocks*, irrespective of the periods at which the parents die, by reading "survivors" as "others." The authorities from Lord THURLOW's time downward, are almost uniformly in favor of reading "survivors" as "others." *Badger v. Gregory*, L. R. 7 Eq. 78, cited in 15 Mews Eng. Case Law Dig. 950; *Holland v. Allsop*, 20 Beav. 408, 15 Mews E. C. Law Dig. 949; *Crowther v. Evans*, 11 Jur. (N. S.) 902; *Lowe v. Land*, 6 L. J. Ch. 234; *Harris v. Harris v. Davis*, 1 Coll. C. C. 416; *Hurry v. Morgan*, 36

[Smith v. Smith *et al.*]

L. J. Ch. 105; *Hodge v. Foot,* 34 Beav. 349; *Waite v. Littlewood,* 42 L. J. Ch. 216; *Jackson v. Sparks,* 38 L. J. Ch. 75; *Hawkins v. Hamerton,* 16 Sim. 410; *Smith v. Osborn,* 6 H. L. Cas. 375; *Askew v. Askew,* 57 L. J. Ch. 629; *In re Whytehead v. Boulton,* 41 Ch. D. 525.

HARALSON, J.—The bill was filed by complainant for the partition of lands in which she claims an interest with others.

The demurrer to the bill as a whole was overruled, and it was held that the complainant was entitled to partition in two hundred acres of land called the pasture land. The grounds of demurrer to the bill as a whole, are numbered from one to fourteen, inclusive. There was another ground of demurrer, numbered four, to that part of the bill which seeks partition of the lands mentioned therein, other than the pasture lands, and the demurrer as to this ground was sustained. The effect of the ruling as stated by the court is, that as to the partition of the pasture lands, the bill contains equity, but as to the other lands, besides these, it does not. The complainant appeals, assigning as error, ruling of the court in sustaining the demurrer to the part of the bill seeking partition of lands other than the pasture. To determine the question, the will of Mrs. Bocock is presented, and must be construed. Mrs. Bocock owned these lands. By the 5th clause of her will, executed on the 22d of May, 1886, she devised to her two nephews, Clifford A., and his brother, Ralph Smith, the lands last referred to, "in joint and equal rights." After making such devises and bequests as she desired, by the 12th clause, she directed that all the balance of her estate of every kind, real and personal,—employing the language of the will,—"shall be equally divided among my relatives and connections as follows," specifying them by name, the said Clifford A. and Ralph Smith being of the number.

By this 5th clause it is clear, that in the 840 acres of the cultivable lands she devised therein to her said two nephews, they took as tenants in common the absolute fee. In the original will there is no word of limitation

or restriction upon the interest devised to these parties in these lands.

Ralph Smith died in 1901, leaving a widow, Evelyn II. Smith, and one child, Ralph Austin Smith, who are made parties defendant to the bill. Clifford A. Smith died testate, shortly after his brother, Ralph, and in the same year, leaving no child, but leaving the complainant as his widow. By his last will he gave all the property of which he was seized and possessed, to the complainant. This will was probated in Marengo county, Alabama. It is shown by the bill, that at the time of his death, said Clifford A. was an inhabitant of Philadelphia, Pennsylvania, whither he had previously moved from Marengo county, and that complainant, at that time, resided with him, and has continued since to reside in that city, and has never married again. She declares no intention of making her home on these lands.

On the 13th of October, 1888, the testatrix, Mrs. Bocock, duly executed a codicil to her will, in which she recited, that on the 22d of May, 1886, she executed the foregoing as her last will and testament, and after mature reflection, she desired to modify and change it. She then refers to the fact, that by the 5th clause of her will she had devised the balance of her land,—amounting to 840 acres,—to her nephews, Clifford A. and Ralph Smith, and states, "after due consideration, I modify said devise by saying, that I do not wish any of the lands sold by said devisees, except the pasture lands, but that they be held and cultivated by said devisees, (her two nephews), being satisfied by so doing, they will make themselves useful, independent and happy members of society." As to those lands which she had given them by her will a fee as tenants in common, she made the following consecutive provisions, which, for convenience of reference, we number: (1.) "If either of my said nephews, Clifford A. Smith, or Ralph Smith, shall die without leaving a child or children surviving him, the share or interest of the one so dying, shall pass to his surviving brother." (2.) "If both of them shall die without children surviving them, then the devise made

[Smith v. Smith *et al.*]

to them under the said clause of my will, shall fall back into my estate, and be divided under the 12th clause thereof,"—the residuary clause. (3.) "If either of my said nephews shall die leaving a widow surviving him, she shall be allowed to have a home on the share of her deceased husband, as long as she may choose to do so, she remaining and continuing his widow. If she shall marry again, this provision shall cease from that time." (4.) "If my said nieces and nephews shall die leaving a child or children surviving them, their respective children shall take their respective shares or interest under the said devises of my will in fee simple." (5.) "I make no modification of the provision in my said will as to the pasture land, 200 acres, but wish the said provision carried out according to its intent."

Taking these provisions in the inverse order of their statement above, it is manifest that there was no change by the codicil, of the devise in the will as to the 200 acres of pasture lands, and the correctness of the decree in overruling the demurrer to that part of the bill is not questioned on either side, but is acquiesced in. The 4th clause need not be considered, since Ralph died leaving a child, who under that clause, took his father's interest, and Clifford A. died without child or children to take his share. It is unnecessary, under the view we take in construction of the will of Mrs. Bocock, to consider the clause numbered 3d above. The object of the bill is to have the complainant declared to be entitled to one-half interest in fee in the lands, other than those designated as the pasture lands, and if the contention is correct the question for a home for complainant on the lands referred to need not be considered, since, if entitled to one-half of the lands absolutely, the question of a home on them will not arise.

The condition mentioned in the 2nd item, if taken literally never happened, since Ralph died leaving a child before Clifford died. This leaves the first item above, and as far as it bears on the construction of the will, the 2nd item, under which complainant claims the fee to half the lands. By the 1st item, if either of the brothers died without leaving a child or children surviving him,

the share of the deceased, was to pass to his surviving brother. Ralph died leaving a child, who took under the 4th item above, without reference to the date of the death of the testatrix, but Clifford A. died without a child, and left no brother surviving him.

As has been stated, under the will as first made, the two nephews took as tenants in common a fee in these lands. By the codicil, the will as at first executed, is referred to and ratified and reaffirmed, and must stand, as to this devise to testatrix's nephews, unless the same has been specifically changed or modified by the codicil, and the absolute fee that had been given, converted thereby into a lessor estate. Divesting clauses are strictly construed, and an estate once vested will not be divested unless all the events upon which the gift over is to take effect, happens.—29 Am. & Eng. Ency. Law (1st ed.), 467; *Grimball v. Patton*, 70 Ala. 62 .

The court held, that, as to the lands other than the 200 acres, called the pasture lands, the said Clifford A. did not take a fee in any part of them, and, therefore, the complainant was not entitled to partition in them. This, it is contended by the complainant, is error.

We are then remitted to the codicil to ascertain if the original devise in fee to the two nephews was divested by it. The only modifying words found therein are contained in the items above, numbered 1 and 2, which for the greater convenience, and at the expense of repeating, we here against set forth: (1.) "If either of my said nephews, Clifford A. Smith, or Ralph Smith shall die without leaving a child or children surviving him, the share or interest of the one so dying, shall pass to his surviving brother." (2.) "If both of them shall die without children surviving them, then the devise made to them under the said clause of my will, shall fall back into my estate, and be divided under the 12th clause thereof,"—the residuary clause.

It appears, that Mrs. Bocock died before either of her said nephews died. The contention on the part of complainant is, that the testatrix, by the use of the

words first quoted from the codicil of her will, intended to provide against the death of one or the other or both of her said nephews in her own life time, and as neither died before she died, they took a fee in the lands as provided in the original will.

In 29 Am. & Eng. Ency. Law (1st ed.), p. 486, after much consideration with citation of numerous authorities in the notes, the principle is thus stated: "Words of survivorship—To what period referred.—Where the gift is to take effect in possession immediately upon the testator's decease, words of survivorship are regarded as intended to provide against the death of the objects of the gift in the lifetime of the testator, and *prima facie* refer to his death. Early English cases extended the rule to cases in which the gift was postponed to a prior life estate, or other particular interest carved out. · The later English cases abandoned this position and adopted the rule that whether the gift be immediate or postponed, and whether the property be real or personal, words of survivorship *prima facie* refer to the period of division. If there is no previous interest given, the period of division is the death of the testator, and survivors at his death take the whole, but if a previous life estate be given, then the period of division is the death of the life tenant, and survivors at such death take the whole."

Again, at page 502, it is said: "If there is an immediate gift to A., and a gift over in case of his death, or if he die, or any similar expression implying the death to be a contingent event, the gift over will take effect only in the event of A.'s death before the testator. * * * In regard to realty, if the devisee (divisor) gives A. the fee, a gift over, in case of A.'s death, will be held to refer to his death before the testator."

In *Hoover v. Hoover,* 116 Ind. 498, in consonance with these principles, the doctrine is broadly stated, as established, that words of survivorship in a will, unless there is manifest intent to the contrary, always relate to the death of the testator, and that, in the absence of a contrary intent, a will always speaks as from the date of the testator's death.

So in *King v. Frick*, 135 Penn. 575, it was held that "when there is an absolute devise, followed by a provision, that if the devisee 'should die without children, grandchildren or wife living,' then over, the words quoted, in the absence of contrary intent shown in the will, refer to the death of the devisee during the lifetime of the testator, and the devisee takes an unrestricted estate in fee.—*Mickley's Appeal*, 92 Penn. 514; *McCormick v. McElligott*, 127 Penn. 230; *Biddle's Estate*, 28 Penn. 59.

In the will before us, the devise of the lands was to the nephews to take effect in possession immediately on the testatrix's death, and was not postponed to a prior estate carved out of the lands, and there is nothing in the codicil which modified the devise, and divested the absolute fee in the nephews, and created in them a lesser estate. Under the principles above stated, they took the absolute fee on the death of the testatrix. Having acquired the fee simple at that time, it was competent, of course, for Clifford A., the husband of complainant, to devise the fee he acquired of her, and she became, by his will, the absolute owner thereof, entitled to her half interest on partition of said lands. The lower court having held otherwise, the decree must be reversed, and one will be here rendered, overruling the demurrer.

Reversed and rendered.