DARROW *et al. v.* MOORE *et al.*

(In Banc. May 16, 1932.)

[142 So. 447. No. 29313.]

Holmes & Bowdre, of Hernando, for appellants.

710

Wilson, Kyser, Armstrong & Allen, and Julian Wilson, of Memphis, Tennessee, for appellants.

Holmes & Bowdre, of Hernando, **Wilson Kyser** and **Armstrong & Allen**, all of Memphis, Tennessee, for appellants.

Julian C. Wilson, of Memphis, Tennessee, for appellants.

Holmes & Bowdre, of Hernando, and **Julian C. Wilson,** of Memphis, Tennessee, for appellants.

Charles Strong, of Macon, and **Magruder, Walker &**
**Magruder**, of Starkville, for appellees.

726

Logan & Barbee, for appellees.

728

Irvin A. Clement, and L. E. Farley, of Memphis, Tennessee, for appellees.

732

738

740

Argued orally by **Julian C. Wilson**, and **Paul Bowdre**, for appellants, and by **Irwin Clement**, and **R. F. B. Logan**, and **L. E. Farley**, for appellees of the full blood, and by **W. W. Magruder**, and **Charles Strong**, for appellee, of the half blood.

**Ethridge, P. J.**, delivered the opinion of the court.

Jacob K. Swoope, on the 3d day of July, 1871, executed his last will and testament in a hotel at Memphis, Tennessee, and died the following day. At the time he executed the will, he was very sick with malarial haemaeturia, and had sent for his family. He was a resident of Florence, Alabama, and owned property in Alabama and Mississippi.

The will reads as follows:

"I, Jacob K. Swoope, of the state of Alabama, being now of sound mind do hereby make and ordain this as my last will and testament, hereby revoking all others.

"All my just debts are first to be paid.

"I give to my nephews, Jacob K. Swoope, son of C. C. Swoope, and Jacob Swoope Moore, son of R. E. Moore, to be equally divided between them in absolute right, the proceeds of a policy which there is on my life of ten thousand dollars in the Knickerbocker Life Insurance Company. I give to my daughter, Tempe, an absolute right in a policy on my life for the sum of twenty-five hundred dollars in the Mound City Insurance Co.

"I give to my wife, Elizabeth T. Swoope, one-third of all the balance of my property, both real and personal, wherever situated for the term of her natural life.

"I give to my daughter, Tempe P. Swoope, all the balance of my property, both real and personal, upon the following conditions and limitations, viz.: that should the said Tempe die without issue of her body, the said property is hereby given to my brothers and sisters, or their descendants, the descendants of each brother or sister to take that share which the brother or sister would have taken had he or she been living. Upon the death of my wife, I give and devise to my daughter, Tempe, the portion of property herein given and devised to my wife for the natural life of my wife, and upon the same limitations.

"I do hereby appoint Charles C. Swoope, Richard E. Moore, and James E. Beasely, executors of this my last will and testament and they shall not be required to execute bond for the performance of the trust. I hereby give my gold watch which was my father's to Jacob K. Swoope, the son of C. C. Swoope. I hereby give up and release to my brother, C. C. Swoope, the debt which he owes me, being by three notes and he shall not be required to pay the same.

"Jacob K. Swoope.

"Signed and acknowledge by the said Jacob K. Swoope in our presence who signed the same at his request and in his presence as witnesses and in the presence of each other. July 3, 1871.

"James Phelan,<br>"R. W. Averitt,<br>"D. D. Saunders."

The will was probated in Lauderdale county, Ala., on the 14th day of July, and subsequently in the state of Mississippi. The testator was about thirty-seven years of age at the time of making the will, and his daughter, Tempe, referred to therein, was nine years of age. The

testator had one brother of the whole blood, C. C. Swoope, and one sister of the whole blood, Fannie Swoope Moore, two brothers of the half blood, Matthew Clay and J. S. Billups, then living, and a brother of the half blood, Thomas Clay, who had died prior to the making of the testator's will, but who had living children at the time the will was made. The wife of the testator, Mrs. Elizabeth T. Swoope, died in 1890. The daughter, Tempe, married G. M. Darrow, one of the appellants, in 1885, and died in the year 1927 without living issue of her body. All of the brothers of the whole and half blood of the testator, and the sister of the whole blood, died before the daughter of said testator.

In the year 1887 a suit was filed in Lauderdale county, Ala., setting forth that certain property owned by the testator and disposed of by the will was unprofitable, and the building situated on part of the land referred to in the bill was old and in a state of bad repair, and the property was not profitable, and prayed for the sale of the property for reinvestment. The bill also had attached to it a copy of the will, and originally in the bill Tempe Swoope Darrow, the daughter of the testator, claimed to be the owner of a fee-simple title, and prayed for a construction of the will; but an amended alternative prayer was made that, if she were not the owner of the fee-simple estate, the court decree the sale for reinvestment, and fix the rights of the parties to the suit therein. This suit remained in court for some time, and the property was ordered sold for reinvestment, the court proceeding upon the idea that the daughter, Tempe Darrow, was possessed of an estate, which on her death without issue would vest in the other parties named in the bill, but the court did not by decree determine the proper construction of the will.

In 1914 a condemnation proceeding was instituted in De Soto county, Miss., by the Mississippi levee board, to condemn certain property, and the money was paid into

court to be distributed according to the rights of the parties, Mrs. Tempe Darrow and other descendants of the brothers and sisters of the whole blood were brought into court by a proceeding instituted by her and others against one of the heirs of the whole blood, and the petition presented upon the theory that Mrs. Darrow was possessed of a life estate, and the others of a remainder, and the funds were apportioned by the court upon that theory, the decree reciting that Mrs. Darrow was then fifty-two years of age, in good health, and fixed the value of her interest upon her life expectancy according to certain mortuary tables. This suit throughout proceeded upon the theory that Mrs. Darrow was the owner of an interest for life, she being then childless, or not having issue of her body, and fifty-two years of age, and the remaining portion, after fixing her life interest, was distributed to the other parties to that proceeding by the chancery court of De Soto county, Miss.

In 1921 the city of Florence, Ala., filed a bill on the equity side of the circuit court of Lauderdale county, Ala., against Mrs. G. M. Darrow (formerly Tempe P. Swoope), making the children and grandchildren of the brothers and sisters of Jacob K. Swoope parties to the suit; that is to say, the brothers and sisters of the whole blood, all of the children and grandchildren of C. C. Swoope, brother of the testator, were made parties to the suit by name. The children of the sister, Fannie Swoope Moore, were also made parties to the suit by name. The children of his half brother, J. S. Billups, and their descendants were made parties to the suit as the unknown heirs of J. S. Billups; and likewise, the descendants of Thomas Clay and Matthew Clay were made parties to the suit by publication. The bill sought to fix a lien upon certain lots in the city of Florence, Ala., owned at the time of his death by Jacob K. Swoope, the charges being based upon the front foot assessment for improvements to property, and prayed for a sale of the

property for the payment of the assessments. The original bill in that suit alleged that Mrs. G. M. Darrow (Tempe P. Swoope) held a life interest in the property, and that the children and grandchildren of the brothers and sister of Jacob K. Swoope had a remainder interest in the property. To this bill the will was attached as an exhibit, and also the ordinance making the improvements and the assessment of the benefits against the property. The bill alleged that Jacob K. Swoope died in the year 1873.

Mrs. Darrow demurred to the bill, upon the ground that the will itself showed that she had a fee-simple title to the property. She also filed a cross-bill making the brothers and sisters of Jacob K. Swoope and their descendants parties to the cross-bill.

A demurrer to this cross-bill by Mrs. Darrow was interposed by Edgar C. Swoope, the son of C. C. Swoope, by Mrs. Sue S. Ashford, the daughter of C. C. Swoope, and by Edgar Moore, the son of Fannie Swoope Moore. A pro confesso was taken against the other parties made defendants by publication.

The circuit judge in Florence held that Mrs. Darrow (formerly Tempe Swoope) had only a life interest in the property, and so decreed, but the case was appealed to the Supreme Court of Alabama, and the Supreme Court held, construing the will, that Tempe Swoope, afterwards Mrs. Darrow, acquired a fee-simple title at the death of the testator, subject only to the life estate of Elizabeth T. Swoope, under the will. The court held that under a will devising a life estate to testator's wife and to the daughter all the balance of the property, upon the conditions ''that should she (the daughter) die without issue said property is hereby given to my brothers and sisters or their descendants,'' the daughter, having survived the testator, acquired the fee-simple title, and that the limitation or provision ''that should she die without issue'' meant that should she die without issue prior to the death

of the testator. There was a dissent by three of the judges in this case.

The appellants strongly rely upon this decision as being conclusive authority that Mrs. Tempe Swoope Darrow acquired a fee-simple title to the lands. It is a recognized rule of construction that in construing a will the words used in the will are to be construed according to their interpretation and meaning as defined in the law of the domicile of the decedent. We do not think the case of Darrow v. City of Florence, 206 Ala. 675, 91 So. 606, referred to, is controlling here, for the reason that the facts and surroundings of the testator were not presented to the court in that proceeding, and, had the court known the facts as they appear in the present record, that court would have reached a different decision as to the meaning of the testator in disposing of his property under the said will. It is a recognized rule of construction that the surroundings of the testator at the time of the execution of the will are proper to be considered, and his meaning deduced from, or in the light of, the circumstances surrounding him at said time.

In Abrahams et al. v. Abrahams et al., 219 Ala. 533, 122 So. 625, the Supreme Court of Alabama in the second syllabus of the Southern Reporter said: ''Circumstances surrounding execution of will may be considered in connection with language used in determining whether testator intended that gift over was to take effect on the death of donee.'' In the third syllabus the court said: ''Circumstances surrounding execution of will considered in connection with language used held to establish that gift over was to take effect on death of donee, regardless of rule as to words of survivorship relating to death of testator.'' In that case the testator made provisions for two of his daughters; one of the provisions for the daughters was that: ''Item 2d. I will and bequeath unto my beloved daughter, Sallie Wayne the place known as the Dent place and also that portion of the Chapman place

lying south and east of a certain slough dividing it from that portion of the Chapman place deeded by me to my son W. T. Abrahams. I further will and desire that if my said daughter, Sallie die without issue that the property herein devised to her shall revert to my heirs at law or such of them or their heirs as may be living at that time." By item 3 of the will provision was made for Lilly Abrahams as follows: "I will and bequeath to my beloved daughter Lilly Abrahams the place known as the Parker place with the appurtenances thereof and also the mules, farming implements and other personal property, except the cotton now on the place or there at the time of my death. And further, at the death of my wife, Sarah T. Abrahams the Homestead in the town of Livingston, Alabama, on which I now reside, I also will and desire that if my said daughter, Lilly Abrahams die without issue that the property herein devised and bequeathed to revert to my heirs at law, or such of them or their heirs as may be living at that time." Both daughters died without issue, Sally Wayne in 1923 and Lilly Abrahams prior to March 10, 1924. The complainants in that case were not all blood relation to the testator, but inherited their interest from his issue, and insistence was made that they were without interest in the residuary estate. It was insisted that the gift over did not take effect, for the reason that the death of the donee did not occur prior to the death of the testator. The court held: "The rule is well established in this state that 'words of survivorship in a will, unless there is a manifest intent to the contrary, always relate to the death of the testator.' Spira v. Frenkel, 210 Ala. 27, 97 So. 104; Darrow v. Florence, 206 Ala. 675, 91 So. 606. But in the instant case there is manifest intent to the contrary.

"The circumstances surrounding the execution of the will, proper here to be considered (Castleberry v. Stringer, 176 Ala. 250, 57 So. 849; Rutland v. Emanuel, 202 Ala. 269, 80 So. 107), in connection with the language used,

make it too clear for discussion that the gift over was to take effect upon the death of the donee, and that the general rule as to words of survivorship relating to the death of the testator can have no application without doing violence to the testator's manifest intent to the contrary. Dickson v. Dickson, 178 Ala. 117, 59 So. 58; Smith v. Smith, 157 Ala. 79, 47 So. 220, 25 L. R. A. (N. S.) 1045; McGlathery v. Meeks, 219 Ala. 89, 121 So. 67.

"The devise to these daughters created in them a base or determinable fee. Dickson v. Dickson, supra; Boshell v. Boshell, 218 Ala. 320, 118 So. 553; Davis v. Memphis, etc., R. Co., 87 Ala. 633, 6 So. 140."

In Smith v. Smith, 139 Ala. 406, 36 So. 616, one Mrs. Bocock in the fifth clause of her will devised to her two nephews, Clifford A. and Ralph Smith, the lands in controversy in this case, "in joint and equal rights." By the twelfth clause of the will, she directed that all the balance of her estate, of every kind, real and personal, "shall be equally divided among my relatives and connections as follows, " specifying them by name; Clifford A. and Ralph Smith being among the number. Subsequntly she executed a codicil, in which she stated that "after due consideration, I modify said devise by saying, that I do not wish any of the lands sold by said devisees, except the pasture lands, but that they be held and cultivated by said devisees (her two nephews), being satisfied by so doing, they will make themselves useful, independent and happy members of society." She then added certain clauses which, for the purpose of reference, were numbered by the court as follows: "(1) 'If either of my said nephews, Clifford A. Smith, or Ralph Smith, shall die without leaving a child or children surviving him, the share or interest of the one so dying, shall pass to his surviving brother.' (2) 'If both of them shall die without children surviving them, then the devise made to them under the said clause of my will, shall fall back into my estate, and be devised under the 12th clause thereof,'

—the residuary clause. (3) 'If either of my said nephews shall die leaving a widow surviving him, she shall be allowed to have a home on the share of her deceased husband, as long as she may choose to do so, she remaining and continuing his widow. If she shall marry again, this provision shall cease from that time.' (4) 'If my said nieces and nephews shall die leaving a child or children surviving them, their respective children shall take their respective shares or interest under the said devises of my will in fee simple.' · (5) 'I make no modification of the provision in my said will as to the pasture land, two hundred acres, but wish the said provision carried out according to its intent.' ''

In this case the court held that fee created by devise of lands to two persons in joint and equal rights is destroyed by a codicil which provides that the land shall not be sold by said devisees, but shall be held and cultivated by them, and, if either die without child, his interest shall pass to the survivor, and, if both die without child, the devise shall fall back into the estate, and the widow of either dying without child shall have a home on the property; and, if the devisees die leaving children, their respective children shall take their respective shares in fee simple, so that the devisee takes only a life estate, and, in case of the death of either without issue, his widow has no rights in the property. It also held that a provision in a will that children of life tenants, living at their death, shall take their several parts in fee simple, creates contingent remainders for the children until birth, and vested remainders as children are born, subject to divestiture by death before the parent. Also that the provision in a will creating a life estate, and vesting the fee in the children of the life tenants living at their death, if either life tenant dies without leaving children, the estate shall go to the survivor, and, if both so die, the devise shall fall into the residue, creates alternative devises to take the place of the contingent remainders on

their failure from lapse or by failure of the condition of their limitation.

The decision in this case reversed a former decision in the same case announced in Smith v. Smith, 139 Ala. 406, 36 So. 616. The original opinion in the last report of this case, 157 Ala. 79, 47 So. 220, 25 L. R. A. (N. S.) 1045, adhered to the construction placed on it in Smith v. Smith, but a dissenting opinion was written, and on a motion for a rehearing one of the judges of the majority went with the dissenting judges and changed the rule. The court held that they were not bound by the former decision, and that under a statute of Alabama they should declare the law as they then conceived it to be, regardless of the announcement in the first opinion.

In the case of Abrahams v. Abrahams, 219 Ala. 533, 122 So. 625, 627, supra, the court held that a devise to daughters, under the will therein construed, created in them a base or determinable fee; citing Dickson v. Dickson, 178 Ala. 117, 59 So. 58, and Boshell v. Boshell [218 Ala. 320], 118 So. 553; Davis v. Memphis, etc., R. Co., 87 Ala. 633, 6 So. 140. The court in its opinion said: "The exact technical definition of the residuary estate, whether a contingent remainder or an executory devise, is not a matter of controlling importance here, and we need not stop to inquire or consider. That the testator had the right to so dispose of his property is very clear (Dickson v. Dickson, supra; section 2144, Code of 1876), and the only question for determination is the intention of the testator as to who should take such residuary estate. The language of the will is that it shall 'revert to my heirs at law or such of them or their heirs as may be living at that time.' "

While it is true that this court will give words contained in the will their significance as interpreted by the court of the domicile of the testator, still we look to the general course of decisions of such state, and will not be concluded by any construction of a will, unless all the

facts and circumstances surrounding the testator at the time, and all of the parties in interest, are before the court. In this connection we desire to say that it seems to us that, if the facts and circumstances had been before the Alabama court, it would have been compelled to have decided otherwise than it did in the case of Darrow v. City of Florence, supra. We assume that that court would reverse itself and change its decision if all the facts and circumstances were brought to its attention and all of the parties were before the court.

We conceive that we have the same right that the Supreme Court of Alabama would have to decline to follow the decisions in this case, and it is manifest, when we take the circumstances surrounding the testator into consideration, that he was making a will in contemplation of death, and that he apprehended an early dissolution. The daughter, Tempe, at that time was a child of nine years of age. It is inconceivable that in the testator's then condition, being sick unto death with a dreadful disease, having his family summoned to his bedside, summoning a lawyer in a city outside of his residence, and all the other circumstances surrounding him, he contemplated that his daughter should die before he did. We also think that the court did not give proper effect or consideration to certain provisions in the will. The provision in the will, "I give to my daughter, Tempe P. Swoope, all the balance of my property, both real and personal, upon the following conditions and limitations, viz.: that should the said Tempe die without issue of her body, the said property is hereby given to my brothers and sisters, or their descendants, the descendants of each brother or sister to take that share which the brother or sister would have taken had he or she been living," is very important. The words "conditions and limitations" seem to be a limitation upon the estate conveyed to Tempe and the conditions under which that estate should go to the blood of the testator should she die with-

out issue. It is manifest to our minds that the dominant purpose of the testator was to keep his property in his own family; that he did not intend that it should go to strangers of the blood, either to the husband of the daughter, should she marry, or to the heirs of his wife. It is true he is making provisions for both the wife and daughter, who would have been his heirs, or the beneficiaries under the law without a will of his estate. The wife would have had a dower interest in one-third of his property of all kinds.

The will gave certain personal property to others unconditionally. The wife was then given a one-third interest for life in the balance of the estate. The language in the will, ''upon the death of my wife, I give and devise to my daughter, Tempe, the portion of property herein given and devised to my wife for the natural life of my wife, and upon the same limitations,'' conveys clearly to our minds the idea that the testator understood that he was giving the daughter a base or determinable fee in the land, and that the provision about her death without issue certainly did not contemplate her death prior to that of the testator. Under the will, the wife could not have had any estate until the testator died, and the provision, upon the death of the wife, that the part given to her for life should go to the daughter in fee, subject to the limitations and conditions named in the will, clearly manifests an expectation and intent that both the wife and the daughter would survive him. Then, under the will, the daughter acquired the fee to all the property, except the specific legacies given in the first part of the will, to be determined and then to go to the brothers and the sisters or the descendants of the brothers and sisters living at the time of the death of the daughter, Tempe, who had the base or determinable fee.

Under general legal definition, the term ''brothers and sisters'' includes brothers and sisters of both the whole and the half blood, and we think it manifest from

all the facts surrounding the testator at the time he made the will that he intended both brothers and sisters of the whole and the half blood to be beneficiaries of his estate, and upon the death of Tempe without issue the estate went to the brothers and sisters or descendants of brothers and sisters as provided under the will. We think it was the intention of the testator, from the language of the will, to convey to the descendants of brothers and sisters equal with brothers and sisters, should any be then living, his estate, and that the descendants of each brother or sister should take such part as the brother or sister would have taken had he or she been living at the time of the termination of the determinable fee.

As to the two-thirds given direct to Tempe P. Swoope, we think the Two Donee Statute, section 2116, Code of 1930, as it read in 1871, does not affect the right of the brothers and sisters nor their descendants from taking as purchasers under the will. The parties were designed to take as a class, and to take proportionately, that is to say, the descendants of each brother or sister as a class would take that part which the brother or sister if living would have taken. This does not in any sense violate our statute above referred to.

As to the third conveyed to the wife for life and to Tempe upon her death, the brothers and sisters being a third donee and not the right heirs of the testator, would violate the statute, and the will as to this one-third of the lands in Mississippi is ineffective and fails, and the descendants of the brothers and sisters of whole blood take to the exclusion of the sisters and brothers of the half blood.

We think the construction we have given the will and the conclusion we have reached harmonize with the general law of both Alabama and Mississippi. The intention of the testator in the will, in our opinion, conforms to the policy of the state of Mississippi, as announced in section 2116, Code of 1930, which provides: ''Every

contingent limitation in any conveyance or will made to depend upon the dying of any person without heirs or heirs of the body, or without issue or issue of the body, or without children, or offspring, or descendant, or other relative, shall be held and interpreted as a limitation, to take effect when such person shall die not having such heir, or issue, or child, or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressly and plainly declared on the face of the instrument creating it."

It is said, however, that the two donee statute, above referred to, is violated by the use of the word "descendants"—the descendants of each brother or sister to take that share which the brother or sister would have taken had he or she been living; that the term "descendants" implies the offspring, whether in the same degree or not, that may be living, and that it would create estate in equal degree in all of the descendants of such brother or sister, whether the parents of the child or children were dead or not. In other words, the children and granchildren would take jointly with the brothers or sisters and in equal degrees. We do not think the will is susceptible to this construction. It must be given a reasonable interpretation consistent with the intent or probable purpose of the testator. The word "descendants" in the will refers to those who would take the estate under the law of descent and distribution in their parents in case of their parents' death. In other words, that the descendants referred to are such descendants as would inherit if no will were in existence, and the property was vested in the ancestor or came through the ancestor in the course of descent. Therefore we are of the opinion that the court below reached the correct conclusion, and the decree is affirmed.

Affirmed and remanded.

754

**Ethridge, J.**, delivered the opinion of the court.

On a former day of this court, this case was considered by Division B, and the judgment of the court below was affirmed. The case is reported in 135 So. 484, 485, et seq.

Thereafter, the judgment of affirmance was set aside, and the opinion was withdrawn and the case argued before Division A and considered by the court in banc.

As to the two-thirds interest given to the brothers and sisters as second donees, the original opinion is here adhered to, and, as the facts therein are correctly set forth, they will be restated in this opinion:

"Jacob K. Swoope, on the 3d day of July, 1871, executed his last will and testament in a hotel at Memphis, Tennessee, and died the following day. At the time he executed the will, he was very sick with malarial hæmaturia, and had sent for his family. He was a resident of Florence, Alabama, and owned property in Alabama and Mississippi. The will reads as follows:

" 'I Jacob K. Swoope, of the state of Alabama, being now of sound mind do hereby make and ordain this as my last will and testament, hereby revoking all others.

" 'All my just debts are first to be paid.

" 'I give to my nephews, Jacob K. Swoope, son of C. C. Swoope, and Jacob Swoope Moore, son of R. E. Moore, to be equally divided between them in absolute right, the proceeds of a policy which there is on my life of ten thousand dollars in the Knickerbocker Life Ins. Company. I give to my daughter, Tempe, an absolute right in a policy on my life for the sum of twenty-five hundred dollars in the Mound City Ins. Company.

" 'I give to my wife, Elizabeth T. Swoope, one-third of all the balance of my property, both real and personal, wherever situated, for the term of her natural life.

" 'I give to my daughter, Tempe P. Swoope, all the balance of my property, both real and personal, upon the

·following conditions and limitations, viz; that should the said Tempe die without issue of her body, the said property is hereby given to my brothers and sisters, or their descendants, the descendants of each brother or sister to take that share which the brother or sister would have taken had he or she been living. Upon the death of my wife, I give and devise to my daughter, Tempe, the portion of property herein given and devised to my wife for the natural life of my wife, and upon the same limitations.

" 'I do hereby appoint Charles C. Swoope, Richard E. Moore, and James E. Beasly, executors of this my last will and testament, and they shall not be required to execute bond for the performance of the trust. I hereby give my gold watch which was my father's to Jacob K. Swoope, the son of C. C. Swoope. I hereby give up and release to my brother, C. C. Swoope, the debt which he owes me, being by three notes and he shall not be required to pay the same.

" 'Jacob K. Swoope.

" 'Signed and acknowledged by the said Jacob K. Swoope in our presence who signed the same at his request and in his presence as witnesses, and in the presence of each other. July 3, 1871.

" 'James Phelan,
" 'R. W. Averitt,
" 'D. D. Saunders.'

"The will was probated in Lauderdale county, Alabama, on the 14th day of July, and subsequently in the state of Mississippi. The testator was about thirty-seven years of age at the time of making the will, and his daughter, Tempe, referred to therein, was nine years of age. The testator had one brother of the whole blood, C. C. Swoope, and one sister of the whole blood, Fannie Swoope Moore, two brothers of the half blood, Matthew Clay and J. S. Billups, then living, and a brother of the half blood, Thomas Clay, who had died prior to the mak-

ing of the testator's will, but who had living children at the time the will was made. The wife of the testator, Mrs. Elizabeth T. Swoope, died in 1890. The daughter, Tempe, married G. M. Darrow, one of the appellants, in 1885, and died in the year 1927 without living issue of her body. All of the brothers of the whole blood and half blood of the testator, and the sister of the whole blood, died before the daughter of said testator.

"In the year 1887, a suit was filed in Lauderdale county, Alabama, setting forth that certain property owned by the testator and disposed of by the will was unprofitable, and the building situated on part of the land, referred to in the bill, was old and in a state of bad repair, and the property was not profitable, and prayed for the sale of the property for reinvestment. The bill also had attached to it a copy of the will, and, originally in the bill, Tempe Swoope Darrow, the daughter of the testator, claimed to be the owner of a fee-simple title, and prayed for a construction of the will; but an amended alternative prayer was made that, if she were not the owner of the fee-simple estate, the court decree the sale for reinvestment, and fix the rights of the parties to the suit therein. This suit remained in court for some time, and the property was ordered sold for reinvestment, the court proceeding upon the idea that the daughter, Tempe Swoope Darrow, was possessed of an estate, which, on her death, without issue, would vest in the other parties named in the bill, but the court did not, by decree, determine the proper construction of the will. In 1914, a condemnation proceeding was instituted in De Soto county, Mississippi, by the Mississippi levee board, to condemn certain property, and the money was paid into court to be distributed according to the rights of the parties. Mrs. Tempe Darrow and other descendants of the brothers and sisters of the whole blood were brought into court by a proceeding instituted by her, and others, against one of the heirs of the whole blood, and the peti-

tion proceeded upon the theory that Mrs. Darrow was possessed of a life estate, and the others of a remainder, and the funds were apportioned by the court upon that theory, the decree reciting that Mrs. Darrow was then fifty-two years of age, in good health, and fixed the value of her interest upon her life expectancy according to certain mortuary tables. This suit throughout proceeded upon the theory that Mrs. Darrow was the owner of an interest for life, she being then childless, or not having issue of her body, and fifty-two years of age, and the remaining portion, after fixing her life interest, was distributed to the other parties to that proceeding by the chancery court of De Soto county, Mississippi.

"In 1921, the city of Florence, Alabama, filed a bill on the equity side of the circuit court of Lauderdale county, Alabama, against Mrs. G. M. Darrow (formerly Tempe P. Swoope), making the children and grandchildren of the brothers and sisters of Jacob K. Swoope parties to the suit; that is to say, the brothers and sisters of the whole blood, all of the children and grandchildren of C. C. Swoope, brother of the testator, were made parties to the suit by name. The children of the sister, Fannie Swoope Moore, were also made parties to the suit by name. The children of the half-brother, J. S. Billups, and their descendants, were made parties to the suit as the unknown heirs of J. S. Billups; and, likewise, the descendants of Thomas Clay and Matthew Clay were made parties to the suit by publication. The bill sought to fix a lien upon certain lots in the city of Florence, Alabama, owned at the time of his death by Jacob K. Swoope, the charges being based upon the front foot assessment for improvements to property, and prayed for a sale of the property for the payment of the assessments. The original bill in that suit alleged that Mrs. G. M. Darrow (Tempe P. Swoope) held a life interest in the property, and that the children and grandchildren of the brothers and sister of Jacob K. Swoope had a re-

'mainder interest in the property. To this bill the will was attached as an exhibit, and also the ordinance making the improvements and the assessment of the benefits against the property. The bill alleged that Jacob K. Swoope died in the year 1873.

"Mrs. Darrow demurred to the bill, upon the ground that the will itself showed that she had a fee-simple title to the property. She also filed a cross-bill making the brothers and sisters of Jacob K. Swoope and their descendants parties to the cross-bill.

"A demurrer to this cross-bill by Mrs. Darrow was interposed by Edgar C. Swoope, the son of C. C. Swoope, by Mrs. Sue S. Ashford, the daughter of C. C. Swoope, and by Edgar Moore, the son of Fannie Swoope Moore. A pro confesso was taken against the other parties made defendants by publication.

"The circuit judge in Florence held that Mrs. Darrow (formerly Tempe Swoope) had only a life interest in the property, and so decreed, but the case was appealed to the supreme court of Alabama [Darrow v. City of Florence, 206 Ala. 675, 91 So. 606], and the supreme court held, construing the will, that Tempe Swoope, afterwards Mrs. Darrow, acquired a fee-simple title at the death of the testator, subject only to the life estate of Elizabeth T. Swoope, under the will. The court held that, under a will devising a life estate to testator's wife and to the daughter all the balance of the property upon the conditions 'that should she (the daughter) die without issue said property is hereby given to my brothers and sisters or their descendants,' the daughter, having survived the testator, acquired the fee-simple title, and that the limitation or provision 'that should she die without issue' meant that should she die without issue prior to the death of the testator. There was a dissent by three of the judges in this case.

"The appellants strongly rely upon this decision as being conclusive authority that Mrs. Tempe Swoope Dar-

row acquired a fee-simple title to the lands. It is a recognized rule of construction that in contruing a will the words used in the will are to be construed according to their interpretation and meaning as defined in the law of the domicile of the decedent. We do not think the case of Darrow v. City of Florence, 206 Ala. 675, 91 So. 606, referred to, is controlling here, for the reason that the facts and surroundings of the testator were not presented to the court in that proceeding, and, had the court known the facts as they appear in the present record, that court would have reached a different decision as to the meaning of the testator in disposing of his property under the said will. It is a recognized rule of construction that the surroundings of the testator at the time of the execution of the will are proper to be considered, and his meaning deduced from, or in the light of, the circumstances surrounding him at said time.

"In Abrahams v. Abrahams et al., 219 Ala. 533, 122 So. 625, the supreme court of Alabama, in the second syllabus of the Southern Reporter, said: 'Circumstances surrounding execution of will may be considered in connection with language used in determining whether testator intended that gift over was to take effect on the death of donee.' In the third syllabus, the court said: 'Circumstances surrounding execution of will considered in connection with language used held to establish that gift over was to take effect on death of donee, regardless of rule as to words of survivorship relating to death of testator.' In that case, the testator made provisions for two of his daughters; one of the provisions for the daughters was that: 'Item 2d. I will and bequeath unto my beloved daughter, Sallie Wayne, the place known as the Dent Place, and also that portion of the Chapman Place lying south and east of a certain slough dividing it from that portion of the Chapman place deeded by me to my son, W. T. Abrahams. I further will and desire that if my said daughter, Sallie, die without issue that

the property herein devised to her shall revert to my heirs at law, or such of them or their heirs, as may be living at that time.' By item 3 of the will, provision was made for Lilly Abrahams as follows: 'I will and bequeath to my beloved daughter, Lilly Abrahams, the place known as the Parker place with the appurtenances thereof, and also the mules, farming implements and other personal property, except the cotton now on the place or there at the time of my death. And further, at the death of my wife, Sarah T. Abrahams, the homestead in the town of Livingston, Alabama on which I now reside, I also will and desire that if my said daughter, Lilly Abrahams, die without issue that the property herein devised and bequeathed to revert to my heirs at law, or such of them or their heirs as may be living at that time.' Both daughters died without issue, Sally Wayne in 1923, and Lilly Abrahams prior to March 10, 1924. The complainants in that case were not all blood relation to the testator, but inherited their interest from his issue, and insistence was made that they were without interest in the residuary estate. It was insisted that the gift over did not take effect, for the reason that the death of the donee did not occur prior to the death of the testator. The court held: 'The rule is well established in this state that words of survivorship in a will, unless there is a manifest intention to the contrary, always relate to the death of the testator.' Spira v. Frenkel, 210 Ala. 27, 97 So. 104; Darrow v. City of Florence, 206 Ala. 675, 91 So. 606. But in the instant case, there is manifest intent to the contrary. 'The circumstances surrounding the execution of the will, proper here to be considered (Castleberry v. Stringer, 176 Ala. 250, 57 So. 849; Rutland v. Emanuel, 202 Ala. 269, 80 So. 107) in connection with the languages used, make it too clear for discussion that the gift over was to take effect upon the death of the donee, and that the general rule as to words of survivorship relating to the death of the testator can have no applica-

tion without doing violence to the testator's manifest intent to the contrary.' Dickson v. Dickson, 178 Ala. 117, 59 So. 58; Smith v. Smith, 157 Ala. 79, 47 So. 220, 25 L. R. A. (N. S.) 1045; McGlathery v. Meeks, 219 Ala. 89, 121 So. 67. 'The devise to these daughters created in them a base or determinable fee. Dickson v. Dickson, supra; Boshell v. Boshell, 218 Ala. 320, 118 So. 553; Davis v. Memphis, etc., R. Co., 87 Ala. 633, 6 So. 140.'

"In Smith v. Smith, 139 Ala. 406, 36 So. 616, one Mrs. Bocock, in the fifth clause of her will, devised to her two nephews, Clifford A. and Ralph Smith, the lands in controversy in this case 'in joint and equal rights.' By the twelfth clause of the will, she directed that all the balance of her estate, of every kind, real and personal, 'shall be equally divided among my relatives and connections as follows,' specifying them by name, Clifford A. and Ralph Smith being among the number. Subsequently she executed a codicil in which she stated that: 'After due consideration, I modify said devise by saying that I do not wish any of the lands sold by said devisees except the pasture lands, but that they be held and cultivated by said devisees (her two nephews) being satisfied by so doing they will make themselves useful, independent and happy members of society.' She then added certain clauses which, for the purpose of reference, were numbered by the court as follows: '1. If either of my said nephews, Clifford A. Smith or Ralph Smith, shall die without leaving a child or children surviving him, the share or interest of the one so dying shall pass to his surviving brother. 2. If both of them shall die without children surviving them, then the devise made to them under the said clause of my will, shall fall back into my estate, and be devised under the 12th clause thereof—the residuary clause. 3. If either of my said nephews shall die leaving a widow surviving him, she shall be allowed to have a home on the share of her deceased husband, as long as she may choose to do so, she remaining and con-

tinuing his widow. If she shall marry again, this provision shall cease from that time. 4. If my said nieces and nephews shall die leaving a child or children surviving them, their respective children shall take their respective shares or interest under the said devises of my will in fee simple. 5. I make no modification of the provision in my said will as to the pasture land, two hundred acres, but wish the said provision carried out according to its intent.' In this case, the court held that fee created by devise of lands to two persons in joint and equal rights is destroyed by a codicil which provides that the land shall not be sold by said devisees, but shall be held and cultivated by them, and, if either die without child, his interest shall pass to the survivor, and, if both die without child, the devise shall fall back into the estate, and the widow of either dying without child have a home on the property, and, if the devisees die leaving children, their respective children shall take their respective shares in fee simple, so that the devisee takes only a life estate, and, in case of the death of either without issue, his widow has no rights in the property. It also held that a provision in a will that children of life tenants, living at their death, shall take their several parts in fee simple, creates contingent remainders for the children until birth, and vested remainders as children are born, subject to divestiture by death before the parent. Also that the provision in a will creating a life estate, and vesting the fee in the children of the life tenants living at their death, if either life tenant dies without leaving children, the estate shall go to the survivor, and, if both so die, the devise shall fall into the residue, creates alternative devises to take the place of the contingent remainders on their failure from lapse or by failure of the condition of their limitation.

"The decision in this case reversed a former decision in the same case announced in Smith v. Smith, 139 Ala. 406, 36 So. 616. The original opinion in the

last report of this case, 157 Ala. 79, 47 So. 220, 25 L. R. A. (N. S.) 1045, adhered to the construction placed on it in Smith v. Smith, but a dissenting opinion was written, and, on a motion for a rehearing, one of the judges of the majority went with the dissenting judges and changed the rule. The court held that they were not bound by the former decision, and that, under a statute of Alabama, they should declare the law as they then conceived it to be, regardless of the announcement in the first opinion. In the case of Abrahams v. Abrahams, 219 Ala. 533, 122 So. 625, supra, the court held that a devise to daughters under the will therein construed created in them a base or determinable fee, citing Dickson v. Dickson, 178 Ala. 117, 59 So. 58, and Boshell v. Boshell, 218 Ala. 320, 118 So. 553; Davis v. Memphis, etc., R. Co., 87 Ala. 633, 6 So. 140. The court in its opinion said: 'The exact technical definition of the residuary estate, whether a contingent remainder or an executory devise, is not a matter of controlling importance here, and we need not stop to inquire or consider. That the testator had the right to so dispose of his property is very clear (Dickson v. Dickson, supra), section 2144, Code of 1876, and the only question for determination is the intention of the testator as to who should take such residuary estate. The language of the will is that it shall "revert to my heirs at law, or such of them or their heirs as may be living at that time." '

"While it is true that this court will give words contained in the will their significance as interpreted by the court of the domicile of the testator, still we look to the general course of decisions of such state, and will not be concluded by any construction of a will, unless all the facts and circumstances surrounding the testator at the time, and all of the parties in interest, are before the court. In this connection, we desire to say that it seems to us that, if the facts and circumstances had been before the Alabama court, it would have been compelled to

have decided otherwise than it did in the case of Darrow v. City of Florence, supra. We assume that that court would reverse itself and change its decision, if all the facts and circumstances were brought to its attention, and all of the parties were before the court.

"We conceive that we have the same right that the supreme court of Alabama would have to decline to follow the decisions in this case, and it is manifest, when we take the circumstances surrounding the testator into consideration, that he was making a will in contemplation of death, and that he apprehended an early dissolution. The daughter, Tempe, at that time, was a child of nine years of age. It is inconceivable that, in the testator's then condition, being sick unto death with a dreadful disease, having his family summoned to his bedside, summoning a lawyer in a city outside of his residence, and all the other circumstances surrounding him, he contemplated that his daughter should die before he did. We also think that the court did not give proper effect or consideration to certain provisions in the will. The provision in the will, 'I give to my daughter, Tempe P. Swoope, all the balance of my property both real and personal, upon the following conditions and limitations, viz., that should the said Tempe die without issue of her body, the said property is hereby given to my brothers and sisters, or their descendants, the descendants of each brother or sister to take that share which the brother or sister would have taken had he or she been living,' is very important. The words, 'conditions and limitations,' seem to be a limitation upon the estate conveyed to Tempe, and the conditions under which that estate should go to the blood of the testator, should she die without issue. It is manifest to our minds that the dominant purpose of the testator was to keep his property in his own family; that he did not intend it should go to strangers of the blood, either to the husband of the daughter, should she marry, or

to the heirs of his wife. It is true he is making provisions for both the wife and daughter, who would have been his heirs, or the beneficiaries under the law without a will of his estate. The wife would have had a dower interest in one-third of his property of all kinds.

"The will gave certain personal property to others unconditionally. The wife was then given a one-third interest for life in the balance of the estate. The language in the will, 'upon the death of my wife, I give and devise to my daughter, Tempe, the portion of property herein given and devised to my wife, for the natural life of my wife, and upon the same limitations,' conveys clearly to our minds that the testator understood that he was giving the daughter a base or determinable fee in the land, and that the provision about her death without issue certainly did not contemplate her death prior to that of the testator. Under the will, the wife could not have had any estate until the testator died, and the provision, upon the death of the wife, that the part given to her for life should go to the daughter in fee, subject to the limitations and conditions named in the will, clearly manifests an expectation and intent that both the wife and the daughter would survive him. Then, under the will, the daughter acquired the fee to all the property, except the specific legacies given in the first part of the will, to be determined and then to go to the brothers and the sisters, or the descendants of the brothers and sisters living at the time of the death of the daughter, Tempe, who had the base or determinable fee.

"Under general legal definition, the term 'brothers and sisters' includes brothers and sisters of both the whole and the half blood, and we think it manifest from all the facts surrounding the testator at the time he made the will that he intended both brothers and sisters of the whole and the half blood to be beneficiaries of his estate, and upon the death of Tempe, without issue, the estate went to the brothers and sisters or descendants of

brothers and sisters as provided under the will. We think it was the intention of the testator, from the language of the will, to convey to the descendants of brothers and sisters equal with brothers and sisters, should any be then living, his estate, and that the descendants of each brother or sister should take such part as the brother or sister would have taken had he or she been living at the time of the termination of the determinable fee.

"As to the two-thirds given direct to Tempe P. Swoope, we think the Two Donee Statute, section 2116, Code of 1930, as it read in 1871, does not affect the right of the brothers and sisters nor their descendants from taking as purchasers under the will. The parties were designed to take as a class, and to take proportionately, that is to say, the descendants of each brother or sister as a class would take that part which the brother or sister, if living, would have taken. This does not, in any sense, violate our statute above referred to."

As to the one-third interest conveyed to the wife, and to Tempe upon her death, it is contended that the will should be construed to mean that the death of Tempe should take place during the life of the wife in order to vest in the brothers and sisters the estate undertaken to be devised to them under the will. We think the very language of the will clearly shows that it was not the intention of the testator to vest the fee in Tempe if she should survive the wife, but that the intention of the testator was that, should Tempe die at any time without issue of her body, the estate should, in that event, vest in the brothers and sisters of the testator.

When the language of the will is carefully considered, it will be seen that the conditions and limitations imposed upon the one-third interest devised to the wife for her lifetime were the same as those provided for in the two-thirds devised to Tempe.

While there is persuasiveness in the argument that the term "brothers and sisters" meant those of the whole

blood, we think the weight of the authority and the better reasoning demonstrate that the term, "brothers and sisters," embraces brothers and sisters of the whole and of the half blood, and that is clearly the meaning as defined by the Alabama court, the domicile of the testator.

It is contended that "right heirs," as used in section 2765, Code of 1906, mean any person who could, under any possible condition, be heir of a testator, and that included in the term are brothers and sisters of the half blood who could, if there are none of the whole blood, inherit from the testator; and that this construction should be given to the statute, and that it would result in upholding the will and making it valid throughout.

There is good reason for an argument of this kind; but, looking to the decisions defining "right heirs" and the reasons underlying these decisions, this construction cannot be placed upon the statute. That statute, by its terms, means those persons who, in event of the testator's or grantor's death, would inherit property as heirs at law. Our own court in Harris v. McLaran, 30 Miss. 533, decided in 1885, said: "The terms 'lawful heirs,' 'right heirs,' and 'heirs,' are synonymous: their signification is fixed by the law; and when they are used in a deed or will, without any superadded words or phrases, indicating a different meaning, they are always understood to be used according to their legal acceptation."

In Brown v. Wadsworth, 168 N. Y. 225, 61 N. E. 250, 253 (1901), the court said: " 'Right heirs' is a term formerly in use in the creation of estates tail to distinguish the preferred to whom the estate was limited from the heirs in general, to whom upon failure of the preferred heir and his line the remainder over was usually finally limited. With the abolition of estates tail the term has fallen into disuse. If no preference was made among the heirs, it would not import any, and therefore it here means the same as the single word 'heirs.' "

In Peabody v. Cook, 201 Mass. 218, 87 N. E. 466, 467, 16 Ann. Cas. 296, the court said:

"The only doubt arises from the presence of the word 'right' before 'heirs' in these two clauses of the will. These two words have been adverted to in Brown v. Wright, 194 Mass. 540, 545, 80 N. E. 612, and in Boston Safe Deposit, etc., Co. v. Blanchard, 196 Mass. 35, 81 N. E. 654, but their meaning was not defined in either of these cases. The phrase 'right heirs' has been before other courts in several instances, and has generally been held to mean the same as heirs at law"—citing authorities. See, also, case notes herein.

Inasmuch as the brothers and sisters of the half blood were not the right heirs of the testator, Jacob K. Swoope, the gift over to them jointly with the brothers and sisters of the whole blood made them third donees under the statute, section 2765, Code of 1906, and prior Codes, and they cannot take under the will.

We are of opinion, however, that the decree of the chancery court of De Soto county in 1914 adjudicated and fixed the interest of Tempe, the daughter, and of the descendants of the brothers and sisters of the whole blood. In this decree, it was adjudged that Tempe had a life interest, and that the brothers and sisters of the whole blood, or their descendants, were entitled to the fee burdened with a life interest.

In view of the fact that this decree adjudicated the rights of Tempe Swoope Darrow and the descendants of the sister and brother of the whole blood, it binds them in this suit and settles their rights. The descendants of the half bloods are not interested in this one-third devised to the widow for life, and can assert no interest therein.

In that case, Tempe Darrow, née Swoope, with certain of the descendants of the brothers and sisters of the whole blood, filed a petition in the chancery court to have the proceeds of part of the land involved in this suit adjudicated and the rights of the parties and the money

paid over according to the rights of the parties. The decree in this suit fixed the right of Tempe Swoope Darrow as an estate for life and the rights of the brothers and sisters of the whole blood, or their descendants, as that of remaindermen entitled to the fee. The original petition in that case sought to have all the descendants of the brothers and sisters of the whole blood join in the petition, reciting that Tempe was entitled to the life estate, and that the others were remaindermen. However, E. C. Swoope and C. C. Swoope, descendants of the whole blood, did not join in the petition for some reason. Thereupon, a petition was filed in the chancery court for a division of the funds paid into court by condemnation of part of the property for levee purposes, joined in by the original signers of the petition, in which the said E. C. Swoope and C. C. Swoope were made defendants, and at the trial they entered their appearance. The decree of the court recited that the court heard oral and documentary evidence, and directed the money to be paid over in accordance with the rights fixed in the decree. Under this decree, Tempe Swoope Darrow received the greater part of the money paid into court, the amount she received being approximately two-thirds of the whole amount paid in for the lands condemned.

This decree was never appealed from. The proceeds of the condemnation were paid to Tempe Swoope Darrow and to the descendants of the brothers and sisters of the whole blood.

We think this constituted res adjudicata between Tempe Swoope Darrow and her privies, and the heirs of Jacob K. Swoope of the whole blood, parties to that suit.

As to the one-third interest given to the widow for life, and afterwards to Tempe, the brothers and sisters of the half blood, or their descendants, have no legal concern therewith, and were not necessary parties to the original suits filed in 1914 in De Soto county, and their not being parties to that suit in no manner affected the rights of

Tempe Swoope Darrow and her privies, and the descendants of the brothers and sisters of the whole blood. In Von Zondt v. Town of Braxton, 149 Miss. 461, 115 So. 557, 558, in the 3rd Syllabus, it was held that: "In a second action between same parties or their privies, although cause of action may be different, judgment in first action is res judicata in second as to any point or question actually litigated and determined in the first."

At the conclusion of the opinion in this case, the court said: "The cause of action may here be, and we will assume is, different from the one in the case wherein the bonds were validated; nevertheless the judgment there rendered is res judicata here, for the rule is that, in a second action between the same parties, or their privies, although the causes of action may be different, the judgment in the first action is res judicata in the second as to any point or question actually litigated and determined in the first. 15 R. C. L. 973; 34 C. J. 868; The Y. & M. V. R. R. Co. v. Sibley, 111 Miss. 21, 71 So. 167; Miller v. Bulkley, 85 Miss. 706, 708, 38 So. 99."

In Harvison v. Turner, 116 Miss. 550, 77 So. 528, 530, it was held that: "Even though the relief sought may be different from that asked in the first suit, yet where the causes of action are substantially the same, the question is res judicata. . . . Where the pleadings in a case present issues involved in said case which might have been litigated therein, as well as those actually litigated, they are res judicata."

The court in this case cited Burkett v. Burkett, 81 Miss. 593, 33 So. 417; Hubbard v. Flynt, 58 Miss. 266; and Hardy v. O'Pry, 102 Miss. 197, 59 So. 73; 23 Cyc. 1215.

In Bates v. Strickland, 139 Miss. 636, 103 So. 432, it was held that, where the court has jurisdiction of the subject-matter and the parties in interest, its judgment is not alone res adjudicata of the questions specifically presented by the pleadings, but is also res adjudicata of all questions necessarily involved and which could have

been presented. In the course of this opinion the court cites many authorities, among which is Jeter v. Hewitt, 22 How. 352, 16 L. Ed. 345, stating as follows: "Res judicata renders white that which is black, and straight that which is crooked."

There are numerous other authorities in this state and out of it which hold to the same effect. See 15 R. C. L. subtitle "Judgments," secs. 450-451; 34 C. J., page 874 et seq., secs. 1283, 1289, 1296, 1315, 1316, 1331, 1341, and 1343; and Land v. Keirn, 52 Miss. 341.

The learned chancellor held that the case was not res adjudicata, but that the appellant Tempe Kyser, in the De Soto county suit, was bound by the equitable election and by estoppel from asserting what is contrary of what was there presented to and decided by the court.

As stated, we are of opinion that the judgment in the suit in 1914 constituted res adjudicata between the appellants George M. Darrow and Tempe Kyser and the descendants of brothers and sisters of the whole blood.

We think the chancellor was in error in decreeing to the descendants of the brothers and sisters of the half blood any interest in the one-third interest devised to the wife of the testator for her life, and upon her death to Tempe Swoope Darrow, his daughter; but that said one-third interest should go to the descendants of the whole blood, by virtue of the decree fixing the rights between the parties and Tempe Swoope Darrow in the De Soto county suit.

For the error indicated, the judgment will be reversed as to the one-third interest, and affirmed as to the two-thirds interest, and the cause remanded for a decree in accordance with this opinion as to the one-third interest; and the judgment of the court below will be affirmed as to the two-thirds interest.

Affirmed in part, and reversed in part.